Hobtexse W. Gabel, J.
Plaintiff instituted this action in the Small Claims Court against the International Organization of Masters, Mates & Pilots of America to recover the sum of $379.52 as damages for denial to plaintiff of an assignment of port relief officer’s work on April 6, 1971 and on November 1, 1971. Defendant sought to have the action transferred to the Federal court but ultimately the motion of defendant was denied by the Federal court, and this court has retained jurisdiction.
At the time of trial the court granted plaintiff’s application to discontinue his claim for work denied on November 1, 1971, without prejudice.
Plaintiff is a seaman with a second and third officer’s rating, and a member in good standing of the defendant union. He has alternated seagoing trips with port relief and other offshore work. On March 25, 1971, at the conclusion of a 59-day sea voyage, plaintiff had registered for both port relief and offshore work and simultaneously applied for vacation. He was given a back to work date of April 28, 1971.
In accordance with the union’s shipping rules, available jobs are posted on bulletin boards at the union hiring hall. Union members apply for them by registering and being assigned a number, the lowest number having priority. When a job is listed it is bid upon and the dispatcher assigns the job to the bidder with the lowest number. On April 6, 1971 a job was posted on the union hall job list for port relief work, and plaintiff, having the lowest number, bid for it. The dispatcher refused plaintiff the assignment on the basis that he was on vacation and therefore not eligible for the job until April 28, 1971.
Plaintiff was referred to a Mr. Fowler, an assistant port agent, who told him that the rules were made by the international execu *357 tive committee to whom plaintiff must complain. Plaintiff was then referred to a Mr. Maher, the pension and welfare plan administrator who is not an elected official of the union. Plaintiff also saw a Mr. Gaier, a New York port agent and vice-president of the Atlantic coast offshore division of the union, and a member of the general executive board and of the offshore division executive council. Mr. Gaier is also a trustee of the pension and welfare plan. Mr. Gaier told plaintiff that his back to work date was April 28, 1971 and he was therefore ineligible for the April 6 assignment. Plaintiff then sent a letter by registered mail to Robert Lowen, secretary-treasurer of the union and the contract enforcing officer, outlining in detail what had transpired and protesting the denial of employment. Plaintiff received no response to his letter nor did the union official initiate any action thereon.
The course of activity pursued by plaintiff is set forth somewhat at length here because defendant has contended that plaintiff is barred from proceeding in this court for failure to exhaust his remedies within the union.
Although defendant argues that there are precise methods for appeal by plaintiff, a reading of the union’s constitution, by-laws and shipping rules, belies such contention. Article XVL of the by-laws provides for a precise method of appeal but only in those cases where a union member has been charged and tried for misconduct. The shipping rules make brief mention of an immediate appeal to other union members present where a dispatcher has refused a member work on the ground that he is intoxicated, unclean or lacks the ability to perform duties. No other specific appeal procedures are set forth and thus the only test to be applied is whether plaintiff took reasonable measures to utilize remedies available to him within the union framework before resorting to the courts. This rule is appropriately enunciated in the case of Caliendo v. McFarland (13 Misc 2d 183), which held that the rule requiring nnion members to exhaust internal remedies before resorting to the court constitutes no more than a requirement to employ all reasonable means to utilize remedies available to them within the union organization before resorting to the courts. The court further held that the right of union members to secure compliance with a union’s constitution and by-laws is an enforceable one for which the protection and aid of the courts may be invoked. In this case the plaintiff has exhausted all reasonable remedies and the court will not require futile acts. (Cunningham v. Milk Drivers & Dairy Employees, Local No. 584, 148 N. Y. S. 2d 114.)
*358 Plaintiff is not barred from this action and the court now directs itself to the substantive issues.
It was conceded upon trial by defendant that plaintiff was denied the assignment of April 6, 1971 on the sole ground that he was on vacation and therefore not eligible for port relief officer’s work until his back-to-work date of April 28, 1971; that the job would have lasted 11 days for which plaintiff would have earned up to at least $500. It was also conceded that new shipping rules went into effect on May 13, 1971 after adoption by referendum ballot of the members, which was subsequent to the date plaintiff sought assignment.
The new rules would have barred the plaintiff from port relief work. However, since the new shipping rules postdate the job applied for, the shipping rules then in force, of 1961, must govern.
Under the 1961 shipping rules plaintiff would clearly have been entitled to the assignment. Subdivision 2 of the 6 ‘ Offshore Shipping Rules ” provides: “ At the time for dispatching jobs, the member with the oldest valid card, bidding on the job, shall have preference for any job he is qualified to fill.”
The rules are very specific in setting forth the manner of registration on shipping lists by members, eligibility requirements, methods for dispatching jobs, and rules of shipping. The rules were enacted “ to govern all shipping from offshore division offices of the defendant union and must be strictly adhered to.” (shipping rules, p. 1).
The rules further provide for amendment by majority vote of the international executive committee, to comply with changes in collective bargaining agreements and/or to comply with Federal or State law. All other amendments must be made in the same manner as the national shipping rules are adopted (shipping rules, p. 15).
The 1961 rules do not contain any provision prohibiting a member filing for vacation from registering on the port relief officer list until his return-to-work date. The 1971 rules do so specifically provide under item 8 of general registration procedures. This provision was submitted to the union members for adoption by referendum ballot and was duly adopted on May 13,1971.
G-reat weight is accorded the fact that such restriction on the right to work was submitted to referendum ballot and thereafter specifically enacted. Had the existing rules of 1961 permitted such restriction a referendum would have been unnecessary and unwarranted.
*359 Defendant testified that it was the trustees of the vacation pay, benefit and pension plan who made the determination that members would not be eligible for port relief officer’s work while on vacation and until their back-to-work date.
The exhibits indicate as well that the determination was made by the trustees of the plan. The trustees are comprised of men from the labor organization and the employer who are charged with the duties of effective compliance with collective bargaining agreements to see that the men get vacation pay, benefits, and pension. They are not directly elected by union members.
The trustees in this instance exceeded their authority in imposing restrictions on the right to work in contravention of existing shipping rules. The exclusive power to amend the shipping rules, and then only to effect compliance with collective bargaining agreements, is vested in the union’s international executive committee (now constituted as the offshore division executive council).
■ The trustees of the various vacation, pension and benefit plans may not, in supervising the various funds, override the union’s rules, by-laws or constitution.
The determination of the trustees which resulted in the denial to plaintiff of work to which he would otherwise have been entitled was without authority and plaintiff is entitled to damages therefor.
The testimony offered by defendant as to subsequent earnings which plaintiff did earn, but might not have earned if he had been given the job assignment of April 6, 1971 since his priority in subsequent bids might have been affected is too speculative for determination.
Accordingly judgment in favor of plaintiff against defendant in the sum of $379.52, with interest from April 17, 1971, and costs.