OPINION OF THE COURT
Joan Marie Durante, J.
This is an action brought by two members of the executive board in conjunction with two general members of defendant union to enjoin a ratification vote by the general membership on a collective bargaining agreement and for a direction that the question be resubmitted to the executive board of the union.
The matter was commenced by the service of an order to show cause requesting a temporary injunction and the simultaneous service of a summons and complaint. During oral argument it became apparent that the parties were *1019 prepared to proceed on the merits of the issues raised and in view of the urgency, such appeared to be the better practice. Where the facts require, it is not improper for the parties to chart a more expeditious procedural course. (Stevenson v News Syndicate Co., 302 NY 81.) The basic issues herein required an expeditious determination and could not be resolved except after a plenary trial. The court reserved decision on all preliminary applications and with the consent of the attorneys immediately proceeded to the trial of the complaint. (Cf. Blake v Biscardi, 52 AD2d 834; see, also, Schlosser v United Presbyt. Home at Syosset, 56 AD2d 615.) Prior to commencing the hearing the parties consented to release defendant Transit Authority.
The issues herein arise out of a vote of the Executive Board of Local 100 of the Transport Workers Union on the question of acceptance of a fact-finding panel’s proposals to end an 11-day work stoppage and whether or not the actions of the executive officer following said vote were in violation of the constitution and by-laws of the union.
Evidence adduced established that in the course of collective bargaining the fact-finding panel created under statutory provisions of the “Taylor Law” (Civil Service Law, art 14) set forth certain proposals. The executive board, duly notified and assembled at Local 100 union headquarters, was summoned to convene in executive session to determine whether or not said offer should be accepted and proposed for ratification by the general membership. Over objections of several members the president directed that the vote be conducted by secret ballot. The vote, conducted in the manner prescribed by the president, resulted in a 22 to 22 tie. Following announcement of the results by the secretary, the president declared the strike was terminated and the offer would be submitted to the general membership for ratification. Several members apparently voiced objections to the presiding officer’s position. However, no motion was made to oppose the president’s direction. Testimony indicates the meeting was less than orderly thereafter. Following a direct question from a member to discern if the membership was to return to work, the president reiterated his position declaring the strike was over and terminated the meeting without a formal motion to adjourn.
*1020 The fundamental question before the court is whether the actions of the president were in conformity with the rules and regulations of the constitution and by-laws of Local 100 of the Transport Workers Union,
Before considering the specific language relating to acceptance of collective bargaining agreements certain threshold questions have to be resolved.
Plaintiffs contend one member of the executive board was absent because of the conduct of certain officers of the defendant union and that his presence could have been procured in time to vote. The absent member was on reserve duty with the National Guard. From the evidence presented it is clear that the absent member was fully apprised of the status of the negotiations at the time he was required to depart for service. He made inquiries as to whether or not he should seek release from his service commitment and was informed, as were all executive members, to hold himself in readiness. Indeed, up to the night before his departure he was present with other board members at the designated assembly point — Local 100 union headquarters. From his own testimony, the court finds that the decision to proceed to National Guard duty was made freely by the member and not at the encouragement or insistence of any union officer. While on duty he made two telephone calls to union headquarters. Although what occasioned the first call is in dispute, the court does not believe the evidence demonstrates any malfeasance or misfeasance by a union official resulting in the absence of that member. He was in fact well apprised of the situation and also aware a vote of the executive board could be required at any time. It does not appear that he requested notification by a union officer or that any was promised beyond that given at the time of his departure. In view of these circumstances the court finds that his absence was of his own doing and cannot provide the basis for directing a new vote by the executive board.
It is also alleged that the conduct of the president was in violation of the provisions of section 2 of article 26 of the constitution of the Transport Workers Union of America which deals with the termination of strikes. The court notes *1021 that defendant union represents employees of a public authority who are all subject to the provisions of the “Taylor Law” (Civil Service Law, art 14). Under the terms of that law these employees are prohibited from conducting strikes or job actions. (Civil Service Law, § 210.) More specifically, an ordei* of the Supreme Court, Kings County (New York City Tr. Auth. v Lindner, NYLJ, April 9,1980, p 3, col 1) was entered enjoining the strike and directing its immediate cessation. Under the circumstances, this court will not consider any of plaintiffs’ arguments relating to section 2 of article 26 of the constitution. Inasmuch as the strike was illegal, it is not relevant whether the president complied with the by-laws in seeking to terminate it. Further, even if this court found that the president violated the by-laws, it could not direct that the strike lawfully continue. Therefore this issue is not properly raised.
The foremost issue is whether the acts of the executive board and the president on April 11, 1980 conformed to the provisions of the by-laws so as to permit a vote by the general membership on the acceptance or rejection Of the proposed collective bargaining agreement.
In this regard, section (h) of article 26 of the by-laws provides: “No proposed contract shall be valid or binding unless first approved by the Executive Board and then ratified by the majority of the members covered by it”.
It is the plaintiffs’ contention that a 22 to 22 vote of the executive board is not necessarily the approval called for by that by-law. The court notes that appróval is not specified to be a majority, as is ratification in the same sentence, and that no provision is made for the event of a tie.
The by-laws of a union constitute a contract between the union and its membership, defining their relationships and the privileges and duties encumbent upon the members and officers. (See Ballas v McKiernan, 41 AD2d 131, 133, affd 35 NY2d 14.) Thus, where the by-laws are clear and explicit, their terms may not be ignored but must be enforced as written. Where, however, the document is silent or ambiguous, the court will look to the practical construction as evidenced by the conduct of the union and its members and interpret it in light of reality rather than any *1022 artificial construction. (See Black v Transport Workers Union of Amer., 454 F Supp 813, 824, affd 594 F2d 851.) The by-laws of a labor organization are not a static thing (Dunne v Hoffa, 231 NYS2d 352, 356) rather a living document which must be interpreted in terms to give meaning to the purpose of the organization.
Under the terms of section (b) of article 8 of the by-laws, the executive board is “the supreme governing body in the Local Union, except only that any action, decision or rule of the Executive Board may be reversed or amended by the vote of the majority of the members of the Local Union”. Thus, as a general rule, the by-laws, while calling the executive board the supreme governing body, make all of its decisions subject to the majority vote of the general membership. It is only in the instance dealing with the acceptance of the collective bargaining agreement that the by-laws appear to give the executive board greater latitude than it would have in other instances. It is just such an interpretation that is advocated by the plaintiffs, meaning that no vote could be taken by the membership until a final vote by the executive board. Considering that the primary function of a labor organization is the obtaining of a collective bargaining agreement defining the wages, hours and working conditions of its members, it would appear unusual that the general membership could override the executive board in all except the acceptance of a collective bargaining agreement. The court notes, however, that collective bargaining agreements are the result of long and difficult negotiations in which the union must consider the competing interests of all its members and achieve a contract which provides the greatest benefit to the largest number. Thus it is generally accepted that a union’s executive board or bargaining committee should be allowed the latitude to negotiate a contract without proposing every offer of management to the general membership. The executive board or bargaining committee is expected to act in good faith for the general membership in achieving what it believes to be the best possible agreement, which is then proposed to the general membership for ratification. (See Ford Motor Co. v Huffman, 345 US 330, 338; see, also, Aaron, Challenges to Collective Bar *1023 gaining, p 119.) In that milieu the purpose of section (h) is clear. It is obviously the intent of the by-laws to allow the executive board to control the collective bargaining process until such time as it believes it has attained the best possible offer which it then proposes to the membership for ratification. It is in this context that the court must determine whether the action of the board on April 11 constituted approval within the meaning of the by-laws. Ideally, the president might have explicitly proposed other motions to the board after the tie vote. It was not an unreasonable interpretation to find in the face of the executive board impasse and the mandate of the Kings County Supreme Court that the membership be afforded the opportunity to accept or reject that offer before being asked to continue a protracted and expensive strike.
Further, plaintiffs have failed to exhaust available internal remedies to address their grievance. Plaintiffs’ argument that to do so would be to no avail, inasmuch as some appeal board members were present at the disputed meeting apparently in accord with the president’s actions, and their concern that an appeal would not be dealt with in a timely fashion, is untenable. The evidence indicates that the appeal board would work expeditiously on matters requiring prompt consideration. In addition panel members involved in disputes that come before them customarily excuse themselves from such deliberations. Plaintiffs cannot preclude the use of proper internal procedure by presuming its outcome in hopes that the court would postscriptly achieve that which the plaintiffs did not accomplish by their failure to act or neglect to perform their vested responsibilities. (See Madden v Atkins, 4 NY2d 283, 291; Keller v Lindelof, 268 App Div 877.)
Plaintiffs’ contention that the presiding officer voted twice is without merit. The executive board’s tie vote on the question does not indicate that the president’s actions violated the constitution and by-laws of Local 100. Nothing in said rules or by-laws precludes the chair’s right to vote. Indeed testimony indicates that it was the chair’s practice to vote on all issues before the board. His single vote as a member of the executive board was properly cast. The president’s direction to terminate the strike and submit the *1024 fact-finding panel’s proposals to the membership cannot be construed as a second vote.
Finally, although the meeting ended abruptly and with much confusion, it is apparent that no motion was made to overrule the chair. Plaintiffs are deemed to have waived their right to complain by their failure to formally object to the president’s directions. Mere vocal expressions of dissent are not sufficient.
Accordingly, the court grants judgment in favor of the defendant union. Complaint dismissed.