OPINION OF THE COURT
John A. Monteleone, J.
In this article 78 proceeding, the petitioner seeks a review of the action of respondents, the New York City Transit Authority and John P. Simpson (hereinafter Authority), in demoting petitioner from the position of bus *179 operator, an order reinstating petitioner to his former position and further, directing paypient by respondent Authority to petitioner of his loss of salary from the date of demotion to the day of reinstatement. In addition, petitioner seeks an order directing respondents, Transport Workers Union of Greater New York, Local 100 and John E. La we (hereinafter Union) to reinstate petitioner (hereinafter Allen) to his position on the executive board of said Union for the balance of his elected term.
This court directed that a hearing must be held to determine the factual issues in dispute, in view of the fact that the disciplinary proceedings were informal and therefore no minutes were available for review by the court. (See Hines v Anchor Motor Frgt., 424 US 554; Vaca v Sipes, 386 US 171; Gosper v Fancher, 40 NY2d 867, affg 49 AD2d 674, cert den 430 US 915; Jackson v Regional Tr. Serv., 54 AD2d 305; De Cherro v Civil Serv. Employees Assn., 60 AD2d 743; Albino v City of New York, 80 AD2d 261.)
Findings based on the testimony offered at the hearing are as follows:
I. The claim by Allen that the Union breached its duty of fair representation by acting arbitrarily or in bad faith, with respect to the disciplinary hearing, was not substantiated by the petitioner. (Hines v Anchor Motor Frgt., supra.)
Allen bases his claim that the Union breached its duty of fair representation on two grounds:
First, that he was misled by his Union representative as to the rate of pay he would receive in the demoted position, and
Second, that he was misled as to the duration of his demotion by both the Union representatives and the Authority representatives.
The testimony established to the satisfaction of the court that the informal hearing was conducted in a fair manner. Allen was informed of the charges against him by a representative of Allen’s department within the authority, a fellow employee; he was informed of his rights by the labor relations assistant; he was defended vigorously not only by Mr. Damaso Seda, vice-president of Local 100, but also by *180 two union organizers; the contents of the waiver form were read aloud by the hearing officer, Mr. Oscar Hawkins, before Allen was requested to decide whether to accept or reject the recommended penalty. Allen was then given the opportunity to have a private consulation with his Union representative prior to informing the hearing officer of his decision. It was established that the rate of pay for the position Allen was demoted to and the date on which such demotion would become effective was left blank at the time Allen signed the form. All parties agree that there was good reason for leaving these specific terms open. It was undisputed that the usual procedure in such demotion situations was adhered to in Allen’s case, to wit, the recommendation of the hearing officer is submitted to the transferee department for a determination of the acceptability of the employee for placement as well as the determination of the appropriate rate of pay and the effective date of the transfer. If the employee is accepted, the department furnishes the actual rate of pay. The effective date is not in dispute here. Allen conceded that no one at the hearing directly misinformed him of the new rate of pay.
Allen’s “belief” that the new rate would be slightly higher than what he actually received is not significant enough to invalidate the waiver in light of the fact that the schedule setting forth the actual rates of pay for the railroad clerk position was equally available to all parties present at the hearing including Allen, who made no specific request for a review of the rate schedule before signing the form. In addition, Allen accepted the completed waiver form on May 2, 1981 by affixing his signature in acknowledgement of service without protesting that the terms of the demotion as completed were unacceptable or unfair.
The belated claim that Allen was misled as to the duration of his demotion was not substantiated by the evidence. It appears that Allen misconstrued the rules as related to him by the labor relations assistant and by the Union representatives concerning his right to petition for reinstatement. Allen testified that he believed that he would, in fact, be reinstated in six months. However, it was established that the rule was clearly presented to him *181 during the disciplinary proceeding that a demotion was usually effective for a period of one year but that he had the right to petition for reinstatement prior to the expiration of the year.
Therefore, the court finds no basis to invalidate the waiver form that Allen signed on April 25, 1980 by which he relinquished his right to a formal hearing required by section 75 of the Civil Service Law. The waiver was knowingly and voluntarily signed as a negotiated settlement of the disciplinary charges brought against him by the Authority. The term of the settlement that he accepted was a demotion to the position of railroad clerk for a period of at least one year which entailed a cut in salary which was the maximum rate available for that position. (Albino v City of New York, 80 AD2d 261, 270, supra.)
Accordingly, that part of the petition which seeks an order directing the reinstatement of the petitioner to his former position and directing the Authority to pay petitioner the salary lost from the date of his demotion is dismissed.
II. The claim by Allen that he was removed from the executive board of the Union in violation of the applicable provisions of the by-laws and constitution of the Union has been substantiated by him.
The by-laws of the Transport Workers Union of Greater New York, Local 100, AFL-CIO, contain no provisions authorizing the summary removal of an officer or member of the local executive board.
The constitution of the Transport Workers Union of America, AFL-CIO, contains various provisions for suspension and removal for cause which are applicable to Union members holding elective positions (art 19, § 4; art 20, §7; art 21). The constitution also contains a provision for recall or removal of an officer of the local or section (Local 100 refers to such “Sections” as “Divisions” pursuant to art 14, § 6) without cause, upon a written petition and a majority vote of the members. (Art 22.) The constitution neither contains a provision, nor authorizes the local to adopt a provision, for the summary removal of a member from an elected position. Despite this lack of authorization, *182 the Union contends that Allen’s removal is allowable pursuant to an established policy of the Union by which an elected member is declared “ineligible” to continue to serve on the executive board when he is no longer employed within the division that he was elected to represent. This policy has been put into effect on the basis of the Union’s interpretation of article 8(a) of the by-laws which is authorized by section (2) of article 15 of the constitution.
Article 8(a) provides, in part, “The Executive Board members shall be elected by and from the members of the respective Divisions and shall be allocated by the Executive Board so as to provide reasonably proportionate representation”. The purpose of holding division elections of executive board members, rather than general union-wide elections, is to “ensure equitable representation”. (Art 15, § 2, constitution of the International Union, p 46.)
The Union asserts, therefore, that it has the power and the right to declare an elected executive board member “ineligible” to serve and to summarily remove him from his elected position. The Union submits that such action is reasonably calculated to advance its objectives as authorized by the constitution and by-laws.
The courts have been reluctant to interfere with the self-government of Unions, especially in cases where purely internal controversies are at issue which do not involve an abuse of power. (Dusing v Nuzzo, 177 Misc 35, mod and affd 263 App Div 59; Dakchoylous v Ernst, 203 Misc 277.) However, where challenges to actions taken by a Union, which are claimed to be in violation of its constitution or by-laws, are brought before the courts, rules have been established to ensure compliance with “the contractual rights conferred by the constitution and by-laws upon all the union members equally”. (Caliendo v McFarland, 13 Misc 2d 183, 188; Dusing v Nuzzo, supra, pp 37, 38.)
The rules, developed by a long line of cases (most recently relied on in a Queens County Supreme Court case, Blair v Local 100 of Transp. Workers Union of Amer., 106 Misc 2d 1018, 1021) have been concisely set forth in Caliendo v McFarland (supra, p 188) as follows: “The Union is an unincorporated association. It is well settled that the *183 constitution and by-laws of such an association express the terms of a binding contract between the Union and its members and between its members, which terms define the privileges secured and the duties assumed, by those who have become members * * * The right of members to secure compliance with a union’s constitution and by-laws is an enforcible one, to which the protection and aid of the courts may be invoked.” (Citations omitted.)
The controversy in this proceeding involves an action taken by the Union which is not, in any manner, specifically authorized by either the constitution or by-laws. The court, in Caliendo (supra, p 188) in dealing with a similar problem, noted that “The document is silent as to the manner and circumstances” by which the union president may summarily remove an elected member of the executive board. Thus, that court stated (p 188), “Accordingly, applying well-settled rules of law, we look to the practical construction, as evidenced in their conduct, that the Union and its members have given to it *** what the parties have done by uniform and unquestioned acts, from the outset and over a long period of time, is entitled to great, if not controlling, weight for it shows how the parties who made the contract understood it” (emphasis supplied). This is the standard against which such Union conduct will be measured by this court.
In an attempt to substantiate that a “uniform and unquestioned” practice, based on a reasonable interpretation of a Union by-law, had been established “over a long period of time” the Union presented two witnesses and offered into evidence the formal findings in a prior case of demotion of a former executive board member.
The Union’s first witness testified that he was asked to resign from the executive board prior to the effective date of a promotion he received within the Authority. He complied with the Union’s request and resigned from the executive board before he was installed in his new position.
In addition, a vice-president of Local 100, who represents two divisions on the executive board, testified that a member of the executive board from one of the divisions he represents was asked not to run for re-election in 1979 *184 because disciplinary charges had been brought against him. A formal hearing was conducted, pursuant to section 75 of the Civil Service Law, on September 24, 1979. The hearing officer submitted his findings and recommendation on October 16, 1979. The Authority found that all charges were sustained, thus demotion was recommended. Subsequently, this decision was appealed to the impartial disciplinary review board of the Authority. That board recommended a modification of the penalty consisting of demotion to platform conductor for only a three-month period. This recommendation was approved by the Authority on March 22, 1980 but the demotion was not put into effect until May 4, 1980.
It was established that this elected member served out his term on the executive board even though the charges against him were sustained in October of 1979. His term ended December 31,1979. The vice-president testified that his actual demotion did not take effect until sometime after March in 1980 but that, in any case, this former executive board member acceded to the Union’s request and did not run in the 1979 election.
The standard, as set forth in Caliendo (13 Misc 2d 183, supra) against which Union conduct in this situation is measured by the court, is a literal one. In order to ascertain whether the “recognized, substantial, legally enforcible right to the specific performance of the provisions of the contract between the Union and its members” (Caliendo v McFarland, supra, p 190) is being undermined by Union actions not specifically authorized by its constitution or bylaws, the court will review such actions to determine whether “what [the] parties meant” is, in fact, “what they have done” (Insurance Co. v Dutcher, 95 US 269, 273).
In addition to the standard which the Union must meet to persuade the court to give legal effect to a Union action based upon an interpretation of a by-law provision, the reasonableness of the interpretation itself must be substantiated in accordance with the general rules of construction appertaining to contracts. When such an interpretation is called into question, the court will review it in the light of the principles of good faith and fair dealing as required of all parties to a contract.
*185 As stated in Lowe v Feldman (11 Misc 2d 8, 11, affd 6 AD2d 684) “A labor contract is not exempt from the operation of the law of contracts, which applies to all agreements (Matter of Triboro Coach Corp. v. New York State Labor Relations Bd., 22 N. Y. S. 2d 1013, affd. 261 App. Div. 636, affd. 286 N. Y. 314) and the fact that one of the parties is a labor union, does not change legal principles relative to contracts. (Greater City Master Plumbers Assn. v. Kahme, 6 N.Y.S. 2d 589, 591.) *** The obligation of good faith and fair dealing calls for fulfillment, without searching for excuses, however plausible they may be, for nonperformance. (Downey v. Shipston, 206 App. Div. 55.) *** Good faith in the interpretation of a contract means the shunning of ‘“subterfuges, quibbles, and political shuffling’” and the words are taken fairly as they are meant. (Hilleary v. Skookum Root Hair Grower Co., 4 Misc. 127, 130.)”
Thus the court in Lowe concluded that the members of a Union are justified in relying upon the written words of the contract with the Union as set forth in the constitution and by-laws. The courts will not give effect to a construction placed on such a contract which will result in a consequence not contemplated by the parties who were not the drawers of the contract. (Lowe v Feldman, supra, p 12.)
With these considerations in mind, two questions must first be answered in order to determine whether Allen is entitled to reinstatement on the executive board pursuant to an order of the court.
(1) Is the interpretation of the constitution and the bylaws, as set forth by the Union, of the applicable articles contained therein, a reasonable one?
(2) Has the Union demonstrated that it has consistently applied these provisions, as interpreted, in the manner required to meet the applicable standard for such Union action?
In reference to question one, the court finds the following:
The Union’s interpretation of article 8(a) of the by-laws purports to create a procedure for the summary removal of an executive board member.
*186 Article 8(a), in fact, deals exclusively with the election of appropriate members to the executive board.
As discussed supra, the constitution provides for removal of an elected member of the local, without cause, upon a recall vote (art 8, § 1).
In addition, article 27(a) in the by-laws, which provides for recall without cause upon membership vote, seems to apply only to section or division officers elected pursuant to article 24(b) of the by-laws and not to executive board members elected pursuant to articles 8(a) and 24(d). Thus, the by-laws have no specific provision for the recall, without cause, of elected executive board members.
Also to be noted are the provisions in both the constitution and by-laws which may result in Allen’s ineligibility to run for re-election in the surface operators division even if he is restored to his former position in that division. This result could occur if he is restored to his former position on a date which is less than 12 months prior to the month in which nominations are made. (Const, art 15, §§ 3, 4, 6; bylaws, art 13[c]).
This is the likely consequence of the Union’s stated policy that only employees of a particular division may attend that division’s regular meetings.
Allen is thus excluded from maintaining his “good standing” within the appropriate division in order to meet the required eligibility standards to run for re-election as set forth in the articles of the constitution and by-laws cited immediately above.
A careful review of the entire contents of both the constitution and by-laws provides not a shred of evidence that the parties ever contemplated summary removal from an elected position on the executive board by the mere fact of demotion which results in a transfer from one division to another within the authority.
The interpretation at issue, which the Union asserts is a reasonable one, has the effect of creating an entirely new by-law provision (or clause to the contract) without adhering to the amendment procedure in the by-laws (art 23) or to the procedure for approval in the constitution (art 14, §5).
*187 The contract, i.e., the by-laws, between the Union and Allen, will not be construed by the court, so as to impose an unjust result on one of the parties. These purported “interpretations” of the by-laws, as applied by the Union to Allen, have resulted in a situation which can only be characterized as unfair and unjust. Such a consequence could not have been contemplated by Allen under the original agreement as drawn by the Union. (Lowe v Feldman, 11 Misc 2d 8, 12, supra.)
Therefore, the court finds in answer to question one, posed hereinabove, that the interpretation the Union has given to all of the herein before cited articles of the constitution and by-laws is unreasonable and, therefore, the application to Allen of the Union policy grounded on that interpretation is action taken which is not within the scope of the Union’s powers.
In reference to question two, the court finds the following:
The offers of proof by the Union, pertaining to the assertion that a Union policy for summary removal of a member from the executive board after such member is declared “ineligible to serve”, has been uniformly and consistently applied, are insufficient to establish this assertion.
In one case presented, the elected member testified that he resigned prior to his promotion and in the other case, it was submitted that the elected member declined to run for re-election. Although the Union attempted to demonstrate that the resignation and the decision not to run for reelection were actions taken by these members pursuant to the uniform application of Union policy, the court is not persuaded by this demonstration. The proof related only to requests made by the Union to these specific members. The fact that these particular elected members of the executive board freely acceded to such requests is not sufficient proof to establish that the Union has uniformly applied a policy of summary removal from an elected position with virtually no notice to the member so affected.
Therefore, the court finds, in answer to question two, that the Union has failed to establish that the application *188 of the Union policy at issue, which rests on an interpretation of the by-laws found to be unreasonable by this court, meets the standard that was set forth in this decision; “uniform and unquestioned acts, from the outset and over a long period of time”. (Caliendo v McFarland, 13 Misc 2d 183, 188, supra.)
The respondents, Transport Workers Union of Greater New York,. Local 100, AFL-CIO, and John E. Lawe, president of Local 100, have acted in clear violation of the constitution and by-laws governing this unincorporated association. Therefore,. Allen is not required to exhaust internal Union remedies in an attempt to obtain reinstatement on the executive board.
The precise methods of appeal and the specific situations excluded from appeal, as set forth in the by-laws, do not apply to .the act of summary removal from the executive board. The court will not require futile acts by a Union member in such a situation. (Caliendo v McFarland, supra, p 189; Soto v International Organization Masters Mates & Pilots of Amer., 74 Misc 2d 355, 357.)
Accordingly, the application for an order directing reinstatement on the executive board is granted.
Respondents are directed to comply with the decision, forthwith, so that petitioner, Henry Allen, may serve out the balance of his elected term with the full rights and duties of that position restored.