[933 NYS2d 195]

In the Matter of CHANDRA LASONDE et al., Respondents, v NORMAN SEABROOK et al., Appellants.

First Department, November 3, 2011

## APPEARANCES OF COUNSEL

*Koehler & Isaacs LLP*, New York City (*Howard G. Wien* of counsel), for appellants.

*Carter & Associate Attorney, PLLC*, New York City (*Damond J. Carter* of counsel), for respondents.

## OPINION OF THE COURT

Acosta, J.

Petitioners are members of Correction Officers' Benevolent Association (COBA), a labor union and not-for-profit corporation with over 8,000 members, all of whom are correction officers employed by the City of New York. Respondents are COBA as well as COBA's President, Norman Seabrook, and its Recording Secretary, Karen Belfield. At issue in this case is whether respondents are obligated under COBA's constitution and bylaws to call a special meeting at which petitioners can present charges of malfeasance and misconduct against COBA's entire Executive Board (including respondents Norman Seabrook and Karen Belfield) in accordance with article IX, section 1 of COBA's constitution.

Background

Between July 1, 2006 and November 20, 2009, petitioner La-Sonde was COBA's financial secretary. Between October 2007 and the week of July 6, 2009, she also served as administrator of two union-sponsored employee benefit trust funds. On or about November 20, 2009, LaSonde and coexecutive board member Allen Blake were accused by Seabrook of having committed insurance fraud by improperly submitting a claim for death benefits for Blake's former wife. After being confronted by Seabrook regarding the fraud allegations, LaSonde and Blake resigned from their executive positions with COBA.[1] One week

---

1. In addition to confronting Blake and LaSonde, Seabrook also reported the alleged insurance fraud to the New York City Department of Investigation, which commenced an investigation. On March 31, 2010, Blake and La-Sonde were arrested and charged in federal court with one count each of mail fraud in connection with the insurance fraud allegations. In June of 2010, Blake was convicted of the charge; LaSonde was acquitted.

later, LaSonde sought to rescind her resignation, but that request was denied.[2]

By letter to Belfield dated December 21, 2009, LaSonde charged Seabrook with misconduct and demanded a special meeting be scheduled to resolve the charges.[3] Belfield responded to LaSonde's letter on December 28, 2009, informing LaSonde that the charges would not be processed due to technical defects in how they were filed. In a letter to Belfield dated January 5, 2010, LaSonde set forth additional charges against Seabrook.[4] By letter dated January 12, 2010, Belfield informed LaSonde that the charges in her January 5, 2010 letter would not be processed because she had not asserted violations of COBA's constitution and bylaws. On January 12, 2010, LaSonde wrote a third time to Belfield in order to resubmit the charges that she had set forth against Seabrook in her December 21, 2009 letter. By letter dated January 21, 2010, LaSonde filed charges against Belfield for misconduct in connection with her failure to serve and process the charges she made against Seabrook.[5] On January 22, 2010, Belfield advised LaSonde that the charges regarding Seabrook in the January 12, 2010 letter would not be processed because she failed to allege violations of COBA's constitution and bylaws.

On February 1, 2010, Blake and LaSonde commenced a federal lawsuit against Seabrook, COBA and others, which included various federal and state claims alleging, inter alia, that Seabrook violated COBA's duty of fair representation by asserting false allegations of insurance fraud, coercing Blake and LaSonde to resign, falsely imprisoning them in COBA's office, denying their request for a special hearing to determine the merits of the allegations of fraud, and inducing the New York City Department of Investigation to retaliate against Blake and LaSonde. In late July 2010, the court dismissed all of the

2. LaSonde alleges that the resignations were coerced while respondents insist that the resignations were voluntary.

3. Specifically, LaSonde claimed that Seabrook violated COBA's constitution and bylaws by disregarding a motion which sought to refuse to accept the resignations of LaSonde and Blake at a December 16, 2009 general membership meeting.

4. The new charges were that Seabrook (1) improperly demanded LaSonde's resignation; (2) falsely imprisoned LaSonde at COBA's offices; and (3) coerced and threatened LaSonde.

5. LaSonde has charged Belfield with misfeasance for failing to serve and process the charges against Seabrook.

federal claims with prejudice and all of the state law claims without prejudice (*see LaSonde v Correction Officers' Benevolent Assoc.*, 2010 WL 3034246, 2010 US Dist LEXIS 78698 [SD NY 2010]).

By letter dated August 17, 2010, LaSonde filed additional charges with Belfield, alleging that various members of COBA's Executive Board (including Seabrook and Belfield) had committed numerous acts of misconduct.[6] LaSonde specifically requested a special meeting to resolve the charges. In a September 24, 2010 letter to Belfield, LaSonde added more charges against the various board members and once again requested a special meeting.[7] Finally, by letter to Belfield dated October 13, 2010, LaSonde resubmitted the August 17 and September 24, 2010 charges and requested a special meeting. In her response, dated March 10, 2011, Belfield unequivocally stated that the charges contained in LaSonde's October 13, August 17 and September 24, 2010 letters would not be presented to a special meeting.

On November 8, 2010, petitioners commenced this proceeding for an order directing respondents to schedule a special meeting to consider the charges brought against Seabrook. On December 29, 2010, respondents filed a motion to dismiss asserting, inter alia, that (1) the petition failed to state a cause of action because COBA was not required to call a special meeting to consider the charges raised by LaSonde; (2) the petition was barred by the applicable statute of limitations; and (3) dismissal of the federal civil lawsuit barred this petition. On March 11, 2011, COBA filed a verified answer.

As a threshold matter, Supreme Court determined that this proceeding was not barred by the dismissal of LaSonde's federal civil suit. As for the statute of limitations argument, the court found that the responses written before August 17, 2010 lacked the clarity of an actual determination required for the statute of limitations to start running. The court further found that COBA's constitution and bylaws mandated that a special meeting

**6.** The charges were directed at (1) the scheduling and cancelling of union meetings; (2) ignoring and refusing to recognize motions; (3) refusing her reinstatement; (4) misleading the membership on "legal guidelines/restrictions"; (5) refusing to provide copies of documents to members; (6) "violating their fiduciary responsibility to represent all COBA Members as well as report wrongdoing within the union"; (7) failing to call the "prior special meetings that were requested"; (8) "[m]isappropriation of Union dues"; and (9) "[f]raudulent State of the Union Financial Reports."

**7.** The new charges against the Board included that they (1) lodged false allegations, (2) made false testimony and (3) refused her reinstatement.

be called promptly to resolve charges made against an executive board member. Accordingly, the court denied the motion to dismiss, granted the petition, and directed COBA's executive board to promptly call a special meeting to resolve the charges (2011 NY Slip Op 30842[U]). This appeal followed.

Analysis

■ It is well established that "[a] union's constitution and by-laws constitute a contract between the union and its members and define not only their relationship but also the privileges secured and the duties assumed by those who become members, unless contrary to public policy" (*Ballas v McKiernan*, 41 AD2d 131, 133 [1973], *affd* 35 NY2d 14 [1974]). A union that is a not-for-profit corporation—such as COBA[8]—is a quasi-governmental body for the purpose of ensuring that such an entity acts in accordance with its rules and regulations (*see Simoni v Civil Serv. Empls. Assn.*, 133 Misc 2d 1, 9 [Sup Ct, Albany County 1986] ["(T)he law has long been settled that once a union decides to incorporate it is subject to New York State's statutes controlling corporate activity irrespective of any countervailing union policy"]). The right of union members to secure the union's compliance with its constitution and bylaws is thus enforceable in the courts of this state through an article 78 proceeding (*Matter of Allen v New York City Tr. Auth.*, 109 Misc 2d 178, 182-183 [Sup Ct, Kings County 1981], citing *Caliendo v McFarland*, 13 Misc 2d 183, 188 [Sup Ct, NY County 1958]).

Generally, a court considering the validity of actions taken by a union official must determine whether said actions are authorized under the union's constitution or bylaws (*Allen*, 109 Misc 2d at 184). In so doing, the court must assess the union official's claim that his or her actions are authorized under the constitution or bylaws by (1) independently reviewing the constitution or bylaws "in accordance with the general rules of construction appertaining to contracts" and (2) determining

---

8. See New York Department of State, Division of Corporations, Corporation & Business Entity Database, Correction Officers' Benevolent Association, http://www.dos.ny.gov/corps/bus_entity_search.html. This Court has discretion to take judicial notice of material derived from official government Web sites such as those generated by the New York State Department of State (*see Kingsbrook Jewish Med. Ctr. v Allstate Ins. Co.*, 61 AD3d 13, 19-20 [2009]).

whether the union official's interpretation is a reasonable interpretation of the constitution or bylaws (*id.*).[9]

Here, COBA's constitution and bylaws provide that meetings are governed generally by article X of the bylaws. Section 3 of that article provides that "[s]pecial meetings of the Association *may* be called by the President at his/her discretion" (emphasis added).

Article IX, section 1 of COBA's constitution and bylaws permits a member of the union to charge any other union member or union officer with "misconduct, misfeasance, nonfeasance or malfeasance." Such charges are required to be submitted to the recording secretary—here respondent Karen Belfield—and the processing of charges "follows the same [procedures] as in Article IV, Section [4]." Article IV, section 4, in turn, provides that "if the [charged] individual is an executive Board member . . . a special meeting of general membership *shall* be called promptly for the purpose of resolving the charges" (emphasis added).

On appeal, respondents first contend that the court erred in granting the petition in that it erroneously found that respondents' failure to hold a special meeting violated COBA's bylaws, or was arbitrary, capricious or an abuse of discretion. According to respondents, a correct reading of the bylaws leads to the conclusion that the decision to call a special meeting is always in the president's discretion despite the language requiring that a special meeting *shall* be called to resolve charges against an executive board member. Although we recognize that section 3 of article X permits the president to call special meetings at his/her discretion, there is no indication that such discretion overrides the mandatory calling of a special meeting in the event of charges of misconduct. Adopting respondents' interpretation of section 3 of article X would inappropriately transform the language of article IV, section 4 into mere surplusage (*Duane Reade, Inc. v Cardtronics, LP*, 54 AD3d 137, 140, 143 [2008] ["a contract should be construed so as to give full meaning and effect to all of its provisions"] [citations omitted]). Since we do not believe that respondents' self-serving interpretation is the most reasonable interpretation of COBA's constitution and bylaws (*id.* at 140), we conclude that Supreme Court was correct in finding that respondents' refusal to call a special meet-

---

**9.** In other words, the court must review the union's interpretation of its constitution or bylaws for consistency with the principles of good faith and fair dealing (*Allen*, 109 Misc 2d at 184).

ing violated COBA's constitution and bylaws, was arbitrary, capricious and an abuse of discretion (*see Allen*, 109 Misc 2d 178 [1981]).[10]

Respondents next contend that Supreme Court erred in determining that the petition was timely with regard to certain charges that LaSonde had initially asserted in December 2009 and January 2010 and then reasserted in her August and September 2010 letters. Respondents are correct in observing that an article 78 proceeding must be commenced within four months of the "determination to be reviewed becom[ing] final and binding upon the petitioner . . . , or after the respondent's refusal, upon the demand of the petitioner . . . , to perform its duty" (CPLR 217 [1]). "To determine if agency action is final, . . . consideration must be given to the completeness of the administrative action and a pragmatic evaluation [must be made] of whether the decisionmaker has arrived at a definitive position on the issue that inflicts an actual, concrete injury" (*Matter of Essex County v Zagata*, 91 NY2d 447, 453 [1998] [internal quotation marks and citations omitted]). "A determination generally becomes binding when the aggrieved party is notified. [Moreover, t]he burden rests on the party seeking to assert the statute of limitations as a defense to establish that its decision provided notice more than four months before the proceeding was commenced" (*Berkshire Nursing Ctr., Inc. v Novello*, 13 AD3d 327, 328 [2004] [internal quotation marks and citations omitted]).

We agree with Supreme Court that none of the responses to LaSonde's letters in January 2010 contained "the kind of clarity of actual determination that is required to begin the time to run for statute of limitations purposes" (2011 NY Slip Op 30842[U], *9-10). Specifically, none of the responses clearly stated that a special meeting would not be held but, rather, provided various reasons why the charges could not be processed, such as failure to file the charges in duplicate. By contrast, in the March 2011 letter finally responding to the August, September and October letters from LaSonde, Belfield specifically and clearly advised that the charges would not be

---

**10.** In any event, there are strong prudential reasons for declining to endorse an interpretation of COBA's constitution and bylaws that would allow one of the union's officers to serve as his or her own judge (*cf.* Madison, Federalist No. 10 ["No man is allowed to be a judge in his own cause, because his interest would certainly bias his judgment, and, not improbably, corrupt his integrity"]).

presented to a special meeting. Accordingly, the reasserted charges were not time-barred (*see Matter of Biondo v New York State Bd. of Parole*, 60 NY2d 832, 834 [1983] ["(F)or the purposes of the commencement of the statutory period, the petitioner cannot be said to be aggrieved by the mere issuance of a determination when the agency itself has created an ambiguity as to whether or not the determination was intended to be final"]; *Berkshire Nursing Ctr.*, 13 AD3d at 328).

Respondents' final argument is that because LaSonde's federal lawsuit arose out of the same facts and circumstances, the charges against Seabrook are barred by res judicata.

■ The doctrine of res judicata dictates that, "as to the parties in a litigation and those in privity with them, a judgment on the merits by a court of competent jurisdiction is conclusive of the issues of fact and questions of law necessarily decided therein in any subsequent action" (*Gramatan Home Invs. Corp. v Lopez*, 46 NY2d 481, 485 [1979]). Here, the dismissal of LaSonde's federal claims "with prejudice" constitutes an adjudication "on the merits" as to those claims (*see Aard-Vark Agency, Ltd. v Prager*, 8 AD3d 508, 509 [2004] ["A dismissal 'with prejudice' generally signifies that the court intended to dismiss the action 'on the merits' "], quoting *Yonkers Contr. Co. v Port Auth. Trans-Hudson Corp.*, 93 NY2d 375 [1999]). Nonetheless, LaSonde's federal lawsuit dealt with different issues of fact and questions of law from those raised in this proceeding—i.e., she was not seeking an order directing that the union schedule a special meeting in her federal claim but, rather, monetary damages based on alleged retaliation. As such, the dismissal of LaSonde's federal claims does not preclude consideration of this petition (*see Silberstein, Awad & Miklos, P.C. v Spencer, Maston & McCarthy, LLP*, 43 AD3d 902, 903 [2007]). Similarly, given the lack of finality inherent in the federal court's dismissal "without prejudice" of LaSonde's state claims, the doctrine of res judicata cannot be applied on the basis of those claims (*see Landau, P.C. v LaRossa, Mitchell & Ross*, 11 NY3d 8, 13 [2008]; *American Equit. Corp. v Parkhill*, 252 App Div 260, 262-263 [1937]).

Accordingly, the order and judgment (one paper) of the Supreme Court, New York County (Alice Schlesinger, J.), entered April 12, 2011, which, in this CPLR article 78 proceeding, denied respondents' motion to dismiss the petition, granted the petition and directed respondents to call a special meeting for the purpose of resolving petitioner Chandra LaSonde's charges

against respondent Norman Seabrook, in his capacity as President of COBA, should be affirmed, without costs.

Saxe, J.P., Friedman, DeGrasse and Abdus-Salaam, JJ., concur.

Order and judgment (one paper), Supreme Court, New York County, entered April 12, 2011, affirmed, without costs.