# State of New York
# Court of Appeals

OPINION

This opinion is uncorrected and subject to revision before publication in the New York Reports.

No. 26
In the Matter of Edwin Agramonte,
et al.,
     Appellants,
   v.
Local 461, District Council 37,
American Federation of State,
County and Municipal Employees,
&c.,
     Respondent.

Arthur Z. Schwartz, for appellants.
Hanan B. Kolko, for respondent.
New York City Municipal Labor Committee, Service Employees International Union,
Local 32BJ et al., amici curiae.

GARCIA, J.:

Petitioners, as members of respondent Local 461, seek to enforce certain provisions in the union's local and parent constitutions governing eligibility of seasonal lifeguard members to vote and run for office in union elections. In the absence of allegations that

- 1 -

every individual member of the union authorized or ratified the challenged conduct, the courts below dismissed the petition as barred by *Martin v Curran* (303 NY 276 [1951]). We now clarify that *Martin* does not apply when union members seek non-monetary injunctive relief against a union. Nonetheless, we affirm the orders below denying the petition and dismissing the proceeding because, under the circumstances here, respondents reasonably interpreted and applied the relevant provisions of the union's constitutions.

I.

Respondent Local 461 represents lifeguards employed by the New York City Department of Parks and Recreation. The union is affiliated with respondent American Federation of State, County and Municipal Employees (AFSCME), District Council 37. Both Local 461 and AFSCME are unincorporated associations. The Local's membership is comprised of approximately 30 year-round lifeguards and more than 1,100 seasonal lifeguards who typically work at pools and beaches from late May to early September.

Under the Local's constitution, all lifeguards—except supervisors—are eligible for membership. However, any member who fails to pay dues by the 15th day of each month is considered delinquent and their membership is suspended after two months of nonpayment. To vote in union elections, a member must be in good standing as of the date of the election. To run for union office, members must be in good standing for one year immediately preceding the election—or three years if running for the office of president. Prior to the election, the union president must appoint an election committee responsible for conducting the election and ascertaining nominee eligibility. The constitution directs that union elections be held in the month of February.

The Local's constitution is subject to AFSCME's constitution, which contains similar provisions governing the payment of dues and good standing. AFSCME's constitution further provides that when a member is "unemployed, on leave for military service, or on unpaid leave for more than [20] days in any calendar month," the member "shall, upon request, be entitled to credit for membership dues for the period of unemployment, military service, or unpaid leave but not to exceed six months within any twelve-month period."

Petitioners Edwin Agramonte, Omer Ozcan, and Raphael Sequiera are members of Local 461. Agramonte serves as a lifeguard year-round while Ozcan and Sequiera serve on a seasonal basis. In October of 2020, the Local's former president was removed from office after AFSCME sustained charges filed by Ozcan and Sequiera alleging that membership meetings were not being held. The removal order clarified that "seasonal lifeguards should be regarded as members in good standing during their employment period" if otherwise eligible. Soon after the removal, respondent Jason Velasquez[1]—the union's vice president—assumed the office of president.

In early February 2021, Velasquez sent notices to the year-round lifeguards indicating that there would be a virtual nomination meeting held on February 25th, to be followed by an election the next day. By letter to DC37 a few days prior, certain seasonal lifeguards—including petitioner Ozcan—requested recognition of their membership and a

---

[1] According to respondents, the petition incorrectly identified Jason Velasquez as "Jason Velzaquez."

six-month dues credit, which they asserted would qualify them to vote and run for office in the upcoming election. DC37 indicated that it would refer the matter to the Local's leadership, but no subsequent action was taken on the requests.

At the union meeting, Agramonte nominated himself for union president and nominated Ozcan and Sequiera, along with other seasonal lifeguards, for the remaining offices. After an objection was raised as to their eligibility, the election committee determined that Agramonte was eligible to run for office but not the seasonal lifeguards. According to the election committee, the 2020 lifeguard season ran from July to September and, even affording the seasonal members a credit for six months of dues, they would not have been in good standing for the immediately preceding 12 months.

At about the same time, petitioners commenced the instant proceeding against the Local, AFSCME, and Velasquez; they also filed an order to show cause seeking a temporary restraining order and preliminary injunction to halt the election that was scheduled for the next day. Supreme Court declined to provide interim relief and Agramonte lost the election.

After unsuccessfully attempting to overturn the election results through the internal union process, petitioners amended their pleading to allege that the 2021 election was conducted in contravention of both the Local and AFSCME's constitutions because seasonal lifeguards were excluded from the vote and ballot. Petitioners moved for an order voiding the 2021 election results and directing the Local to hold a new election in which eligible seasonal dues-paying lifeguards were permitted to vote and run for office. According to emails and letters submitted by petitioners, Ozcan and at least one other

seasonal lifeguard requested a six-month dues credit just a few days before the 2021 election took place.  Their requests stated that they had worked and paid dues from May to September in 2020, but that the City had failed to deduct dues from their vacation checks in December.

Respondents cross-moved to dismiss.  As a threshold matter, respondents asserted that petitioners' failure to plead that every member of the Local had authorized or ratified the challenged actions—as they argued was required by *Martin v Curran* (303 NY 276 [1951])—was fatal to petitioners' claim.  Respondents also argued that petitioners' claims lacked merit because the union had reasonably interpreted and applied the plain language of the relevant constitutional provisions governing eligibility.

Supreme Court denied petitioners' motion to void the election, denied the amended petition, granted respondents' motion, and dismissed the proceeding (2022 NY Slip Op 30317[U], *1-2 [Sup Ct, NY County 2022]).  The court held that *Martin* mandated dismissal because "petitioners failed to sufficiently plead that the individual members of Local 461 authorized or ratified the purportedly unlawful conduct" (2022 NY Slip Op 30317[U] at *6-7).  In any event, Supreme Court determined that respondents had reasonably applied the union constitutions to conclude that the seasonal lifeguards did not qualify to participate in the 2021 election (*see id.* at *8).  The Appellate Division affirmed, holding that dismissal was proper under *Martin* (209 AD3d 478 [1st Dept 2022]).  We granted petitioners leave to appeal (*lv granted* 39 NY3d 908 [2023]).

II.

In *Martin v Curran*, this Court held that a libel action for damages was properly dismissed as asserted against representatives of a union in their official capacities because the complaint did not allege that the individual members of the union had authorized or ratified publication of the libel in question (303 NY 276, 280 [1951]).  Since the union was an unincorporated association, the Court explained, "the liability to be enforced in any . . . suit" against it "is still that of the individual members as individuals and so the cause of action has to be one 'for or upon which the plaintiff may maintain such an action . . . against all the associates, by reason of their . . . liability therefor, either jointly or severally' " (*id.* at 281, quoting General Associations Law § 13).  The *Martin* Court recognized that General Associations Law § 13[2] and its predecessor statutes, authorizing suits against a union to be brought against the association president or treasurer in their representative capacities, dispensed with the need to name each individual member as required at common law (*Martin*, 303 NY at 280-281).  But, the Court clarified, such "privilege was conferred by the Legislature on plaintiffs for their 'convenience,' and created no new substantive right or liability" (*id.* at 281 [internal citation omitted]).  We determined that "for better or worse, wisely or otherwise, the Legislature has limited such suits against association officers,

---

[2] General Associations Law § 13 provides in relevant part that actions or proceedings against unincorporated associations "may be maintained, against the president or treasurer of such an association, to recover any property, or upon any cause of action, for or upon which the plaintiff may maintain such an action or special proceeding, against all the associates, by reason of their interest or ownership, or claim of ownership therein, either jointly or in common, or their liability therefor, either jointly or severally."

whether for breaches of agreements or for tortious wrongs, to cases where the individual liability of every single member can be alleged and proven" (*id.* at 282).

Not long after *Martin*, this Court held that plaintiff union members who were wrongfully expelled were entitled to the relief of reinstatement as well as damages against the union for lost wages (*see Madden v Atkins*, 4 NY2d 283 [1958]). In *Madden*, the plaintiffs were expelled after a fiercely contested election. We rejected the union's basis for expulsion, clarifying that "[i]f there be any public policy touching the government of labor unions, . . . it is that traditionally democratic means of improving their union may be freely availed of by members without fear of harm or penalty" and "[t]he price of free expression and of political opposition within a union cannot be the risk of expulsion or other disciplinary action" (*id.* at 293). We therefore held that the Appellate Division had properly ordered reinstatement; we did so without any discussion of *Martin*.

Only in addressing plaintiffs' pecuniary damages claim for lost wages did we consider whether *Martin* "forbade [the] action against the union for damages[] unless the proof established an authorization or ratification of the expulsion by all of the members and thereby rendered each and every one of them responsible for the wrong committed" (*Madden*, 4 NY2d at 294). Recognizing that *Martin* was implicated "where damages are sought against an unincorporated union" (*Madden*, 4 NY2d at 294-295), this Court nonetheless concluded that strict application of *Martin* to cases of wrongful expulsion "would have far-reaching consequences" because the absence of any redress for damages suffered would risk "stifl[ing] all criticism within the union" (*Madden*, 4 NY2d at 296). To address that risk, we held that where union members delegate disciplinary and expulsion

authority to part of the membership, "the act of expulsion will be regarded as the act of the union for which damages may be recovered from union funds" even if the act was not specifically ratified by every individual member (*id.*).

More recently, in *Palladino v CNY Centro, Inc.*, this Court applied *Martin* to uphold the dismissal of an action brought against a union by a member seeking damages for an alleged breach of the duty of fair representation (*see* 23 NY3d 140, 144 [2014]).  While this Court acknowledged that the *Martin* rule represents a minority approach that has been criticized by other courts and jurisdictions, the Court nonetheless declined to overrule it, instead deferring to the legislature (*see Palladino*, at 148-152).

*Martin's* continued viability is not before us on this appeal.  Rather, petitioners argue that *Martin* does not apply where, as here, only injunctive relief is requested— namely, to enforce the union's compliance with constitutional provisions governing the members' right to vote and run for union office.  We agree.

The plaintiffs in *Martin*, *Madden*, and *Palladino* sought to hold the respective unions liable for *monetary* damages.  We interpreted General Associations Law § 13 and its predecessors as establishing that "[a] plaintiff 'cannot, in any case, maintain . . . an action against the [association] officer, *unless the debt, which [the plaintiff] seeks to recover*, is one upon which [they] could maintain an action against all the associates by reason of their liability therefor, either jointly or severally' " (*Martin*, 303 NY at 281 [emphasis added], quoting *McCabe v Goodfellow*, 133 NY 89, 92 [1892]).  Indeed, the requirement that union members approve or ratify the union's alleged wrongdoing when pecuniary damages are sought against the union is consistent with potential personal

liability for the individual members, recognized at both common law and by the relevant statutory scheme. Should the plaintiff "get judgment [against the union] but fail to collect it from the association's funds, [the plaintiff] could bring another suit for the same tort against the members themselves, to reach their separate assets, 'as if the first action had not been brought' " (*Martin*, 303 NY at 282, quoting General Associations Law § 16; *see* General Associations Law § 15).

The limitation of the *Martin* rule to claims seeking damages is also supported by the precedent upon which this Court relied in concluding that the libel action could not be maintained (*see e.g. Glauber v Patof*, 294 NY 583, 584 [1945] [in the absence of proof that the general membership knew or approved of the irregularity "the court was without power to award a *recovery of damages* as against an unincorporated association" (emphasis added)]; *Browne v Hibbets*, 290 NY 459, 467 [1943] ["plaintiff's right to *recover damages* depends upon proof of facts rendering all the members of the association liable for the sum claimed" (emphasis added)]; *People ex rel. Solomon v Brotherhood of Painters, Decorators & Paperhangers of Am.*, 218 NY 115, 123 [1916] ["It is well established that in a proceeding or action against a voluntary, unincorporated association, *to recover damages*, facts must be alleged and proved which render all the members of such association liable for the sum claimed" (emphasis added)]; *Schouten v Alpine*, 215 NY 225, 232 [1915] [observing that, in the event of recovery, "*satisfaction is to be made . . . out of personal property belonging to the association,* or owned jointly, or in common, by all the members thereof" (emphasis added)]; *McCabe*, 133 NY at 92-93 ["The plaintiff must allege and prove, and the court must find that all the members of the association were liable,

either jointly or severally, to *pay the plaintiff the amount of his claim*, or the judgment in this action cannot stand" (emphasis added)]). Based on this precedent, we articulated the requirement of individual member ratification as a condition for monetary claims against the union.

In *Madden*, we recognized what we have since characterized as a "narrow exception" (*Palladino*, 23 NY3d at 147) to *Martin's* requirement by holding that *pecuniary* damages were available even absent allegations that all members ratified or approved the challenged conduct (4 NY2d at 294-295). By contrast, *Madden* created no exception to *Martin* in order to justify reinstatement; *Martin* did not operate to bar the injunctive relief in the first instance. Respondents' expansive interpretation of *Martin* as barring petitioners' suit here despite the absence of any damages claim would eliminate the longstanding distinction. Doing so, and in effect extending *Martin* to bar union members from seeking any form of injunctive relief against a union, would have troubling implications. Respondents do not seriously dispute that, if *Martin* precludes petitioners' claim here, union members would have no recourse to the courts even when incumbent union officials are allegedly manipulating elections to maintain power. Applying *Martin* to bar suits seeking to compel union officials to abide by their respective union constitutions and bylaws would have "far-reaching consequences" and risk "stifl[ing] all criticism" and democracy "within the union" (*Madden*, 4 NY2d at 296).

We therefore clarify that where, as here, union members seek only injunctive relief against the union and state no claim for pecuniary damages, the pleading is not governed by *Martin* and, as such, a plaintiff need not allege the participation of each individual

member to bring a claim in accordance with General Associations Law § 13. The petition below was therefore improperly dismissed on that ground.

III.

Respondents nonetheless urge us to affirm the order below denying the petition and dismissing the proceeding. According to respondents, the union reasonably interpreted its constitutions in determining that the seasonal lifeguards in question were not entitled to vote or run for office in the 2021 election. Respondents are correct.

" 'The constitution and by-laws of the . . . union define the relations of the union and its members; the powers of the union officers and committees and the rights of the members' " (*Matter of Willard Alexander, Inc. [Glasser]*, 31 NY2d 270, 273 [1972], *cert denied* 410 US 983 [1973], quoting *O'Keefe v Local 463 of United Assn. of Plumbers & Gas Fitters*, 277 NY 300, 304 [1938]; *see Polin v Kaplan*, 257 NY 277, 281 [1931]). Courts assess whether union conduct is authorized by "reviewing the constitution or bylaws 'in accordance with the general rules of construction appertaining to contracts' and . . . determining whether the union['s] . . . interpretation is . . . reasonable" (*Matter of LaSonde v Seabrook*, 89 AD3d 132, 137-138 [1st Dept 2011], *lv denied* 18 NY3d 911 [2012], quoting *Matter of Allen v New York City Tr. Auth.*, 109 Misc 2d 178, 184 [Sup Ct, Kings County 1981]; *see Matter of Desir v Spano*, 259 AD2d 749, 749-750 [2d Dept 1999]).

It is not disputed that, under the Local and AFSCME constitutions, seasonal lifeguards are eligible for union membership. However, the constitutions require all union members—including seasonal lifeguards—to pay dues by the 15th of each month, and two months of delinquency results in revocation of good standing and suspension of

membership.  Further, to be eligible to run for office, members must have paid dues and been in good standing for the 12 months immediately preceding the election.  A member may be credited with the payment of dues "upon request" while unemployed, but only up to a maximum of six months.

Applying these provisions, a seasonal lifeguard may qualify to vote and run for office either through paying dues or through a combination of paying dues and submitting a proper request for a dues credit.  Here, however, even assuming the seasonal lifeguards were provided the benefit of a six-month dues credit, the record demonstrates they would nevertheless fail to satisfy the constitutional requirement that they be in good standing for the 12 months immediately preceding the election.  Moreover, under the circumstances presented, we cannot say that it was unreasonable for the union to conclude that the seasonal lifeguards were not in good standing for the two months leading up to the election for purposes of qualifying to vote.  Inasmuch as petitioners' remaining contentions lack merit, the petition was properly denied.

Accordingly, the order of the Appellate Division should be affirmed, with costs.

Order affirmed, with costs. Opinion by Judge Garcia. Chief Judge Wilson and Judges Rivera, Singas, Cannataro, Troutman and Halligan concur.

Decided March 14, 2024