THOMAS ALBINO, Appellant, v CITY OF NEW YORK, Respondent.

Second Department, May 4, 1981

### APPEARANCES OF COUNSEL

*Morris Weissberg (Robert J. Krengel* of counsel), for appellant.

*Allen G. Schwartz, Corporation Counsel (Pamela Seider Dolgow* and *Ronald E. Sternberg* of counsel), for respondent.

### OPINION OF THE COURT

GULOTTA, J.

The question posed by this appeal is whether the plaintiff, an employee of the defendant municipality, has sufficiently established that his union, as his exclusive bargaining agent, breached its statutory duty of fair representation in the handling of his grievance against his employer to permit

him to sue his employer directly under the rationale of *Vaca v Sipes* (386 US 171). We conclude that the question must be answered in the negative and the judgment dismissing the complaint affirmed.

For several years prior to April 20, 1978, the plaintiff, Thomas Albino, was employed by the defendant City of New York as a Park Supervisor in its Department of Parks and Recreation, and was a member in good standing of Local 1508 of the Uniformed Park Officers Union, an affiliate of District Council 37 of the American Federation of State, County and Municipal Employees. Effective that date, Mr. Albino was transferred, without his consent, from his normal work location in Brooklyn to the Queens district office in Rego Park, whereupon he filed a grievance (dated April 28, 1978) contending that his transfer was in "complete disregard [of] the seniority rights guaranteed in the collective bargaining agreement between District Council 37 and the City of New York", and, more particularly, section 2 of article IV of the underlying collective bargaining agreement. That section provides, in pertinent part, as follows: "*Section 2.* Any permanent employee wishing a transfer within title to another location, must make written application to the Personnel Officer. The application shall be placed on file in accordance with seniority, in a transfer registry, copies of which shall be available in all Borough Offices. A listing of vacancies shall be made available to the Union every three (3) months. *Transfers to available vacancies in all positions shall be made on the basis of seniority, subject to the provisions of the following sentence. Transfers based upon responsibility and ability to perform the work required can be made after notice to and discussion with the Union.* In filling available vacancies, transfer requests shall have priority over the assignment of new employees. Seniority in title shall commence on the date of permanent Civil Service appointment, and ties will be broken on the basis of original list numbers. An employee accepting a transfer will forfeit his seniority for a period of six (6) months. *The PRCA[1] reserves the right to make a transfer for the good of the PRCA, after notice to and*

---

1. Parks Recreation and Cultural Affairs Administration.

*discussion with the Union. Transfers will not be made for arbitrary or capricious reasons."* (Emphasis supplied.)

Having proceeded without success through the first four stages of the contractual grievance procedure, on July 12, 1978 District Council 37 filed a demand for arbitration of the plaintiff's grievance and, on March 5, 1979, a consolidated hearing involving this and 10 other similar grievances was held before an arbitrator. At that time, the union presented several exhibits and four witnesses (including the plaintiff) in support of the grievants' position, while the city presented the testimony of a single witness (the Deputy Commissioner of the Department of Parks and Recreation) in opposition. After hearing this testimony and the arguments of the respective attorneys, the arbitrator concluded the hearing and, in a written opinion dated March 30, 1979, denied the respective grievances on the ground, *inter alia,* that the transfers in question were "involuntary" transfers, made in the course of an administrative reorganization of the Parks Department, and that the foregoing was within the prerogative of management in accordance with so much of section 2 of article IV of the agreement as states: "The PRCA reserves the right to make a transfer for the good of the PRCA after notice to and discussion with the Union." The pertinent parts of the arbitrator's opinion are set forth below:

"Involved herein are two grievances with eleven grievants which were consolidated for purposes of this arbitration. They concern the involuntary transfers of twenty-nine parks supervisors in April 1978, and the stipulated issue for decision by the undersigned as arbitrator is:

"Did the City violate Article IV, Section 2 of the 1972-1974 Parks working conditions agreement? If so, what shall be the remedy?

"Article IV, Section 2, in major part, deals with voluntary transfers. In pertinent part, the section of this provision of the agreement states the following regarding administrative, involuntary transfers:

". . . The PRCA reserves the right to make a transfer for the good of the PRCA, after notice to and discussion

with the Union. Transfers will not be made for arbitrary or capricious reasons.

"The following is stipulated: that there was a meeting between District Council 37, the Local Union, and the Parks Department in April 1978; that the meeting was called to consider the transfer of fifty supervisory employees in the Parks Department; that the meeting resulted in the transfer of twenty-nine employees; that the Employer, at the meeting, maintained that the transfers were for the good of the Parks Department; that the transfers were discussed for the group of transferees as a whole, and individual cases were not discussed.

"No reasons were given at the April 1978 meeting for transferring the particular individuals who were involved in the reorganization of the supervisory staff. The Union contends that the refusal and failure to supply the names and the reasons on an individual basis violates the contract * * *

"The City does not believe that it is obligated to discuss individuals in a reorganization of its supervisory force, and whether it is required to do so under Article IV, Section 2 is basically the issue for decision by the undersigned * * *

"This case does not involve one transfer with a refusal to explain the reason as in the 1975 arbitration between the parties (OCB Case No. A-420-75). It involves a reorganization with an explanation of the policy considerations for the transfers.

"Reasonable people might disagree regarding the desirability of the reorganization. It was, however, a management prerogative, and the fact of possible disagreement as to whether it would result in benefit to the PRCA does not make the reorganization arbitrary or capricious.

"The reasons for the reorganization, the considerations involved, and how the overall good of the PRCA would hopefully result were presented by management at the April 1978 meeting. This meets the requirement of instituting discussion with the Union. The fact that the Department's public image may also have been raised at the meeting does not make the overall reorganization arbitrary or capricious.

"To require management to discuss each change in terms of its individual merit effectively interferes with management's right to manage by introducing accountability for that management to the employees. In the present case it would also result in a melange of invidious comparisons.

"There is no evidence of an arbitrary or capricious action against any employee. Testimony by a supervisor that he sees no advantage to the Department in his transfer is not proof of such a claim.

"On the basis of the evidence, argument, and testimony at the March 5, 1978 [*sic*] hearing, I do not find a violation of the agreement."

Upon being apprised of the arbitrator's decision, Mr. Albino requested his union to take legal action to challenge the award, but was informed, *inter alia*, that after reviewing the matter with counsel it had been determined by the union that the decision was unassailable within the narrow confines of CPLR 7511[2]. This position was thereafter con-

---

2. CPLR 7511 provides, in pertinent part, as follows:

"Vacating or modifying award

"(a)  When application made. An application to vacate or modify an award may be made by a party within ninety days after its delivery to him.

"(b)  Grounds for vacating.

"1.  The award shall be vacated on the application of a party who either participated in the arbitration or was served with a notice of intention to arbitrate if the court finds that the rights of that party were prejudiced by:

"(i)  corruption, fraud or misconduct in procuring the award; or

"(ii)  partiality of an arbitrator appointed as a neutral, except where the award was by confession; or

"(iii)  an arbitrator, or agency or person making the award exceeded his power or so imperfectly executed it that a final and definite award upon the subject matter submitted was not made; or

"(iv)  failure to follow the procedure of this article, unless the party applying to vacate the award continued with the arbtitration with notice of the defect and without objection.

"2.  The award shall be vacated on the application of a party who neither participated in the arbitration nor was served with a notice of intention to arbitrate if the court finds that:

"(i)  the rights of that party were prejudiced by one of the grounds specified in paragraph one; or

"(ii)  a valid agreement to arbitrate was not made; or

"(iii)  the agreement to arbitrate had not been complied with; or

"(iv)  the arbitrated claim was barred by limitation under subdivision (b) of section 7502.

"(c)  Grounds for modifying. The court shall modify the award if:

*(n. contd.)*

firmed in a letter (dated June 28, 1979) from District Council 37's general counsel, wherein it was stated:

"It appears that the arbitrator, in rendering a decision with which we do not agree, did not legally exceed his power to interpret the provisions of the collective bargaining agreement. Furthermore, there is no indication of any fraud in the procuring of the award, nor any partiality on the part of the arbitrator.

"Accordingly, I must inform you that it is my judgment that there is no basis under Article 75 of the Civil Practice Law and Rules to vacate or modify this award, and that District Council 37 will not commence any court action for such purpose."

Dissatisfied with his union's position on this matter, on June 30, 1979 the plaintiff, acting in his individual capacity, commenced a CPLR article 75 proceeding against the City of New York and Distict Council 37 to vacate the arbitator's award. Respondents thereupon moved to dismiss the petition and, on November 7, 1979 their motions were granted on the ground that the plaintiff lacked the requisite standing to challenge the award. The court (SUTTON, J.) opined:

"The Union was the representative for petitioner and participated in the proceeding on his behalf, with the City of New York. Petitioner not being a party who participated in the arbitration, lacks standing to bring this proceeding. (CPLR 7511, cf. *Farmer v H. O. Penn Machine Co., Inc.,* 50 AD2d 562.) * * *

"The proper procedure may be the bringing of a plenary action against his employer, as well as the Union if proof is available that the Union [has] breached its duty of fair representation."

---

"1. there was a miscalculation of figures or a mistake in the description of any person, thing or property referred to in the award; or

"2. the arbitrators have awarded upon a matter not submitted to them and the award may be corrected without affecting the merits of the decision upon the issues submitted; or

"3. the award is imperfect in a matter of form, not affecting the merits of the controversy * * *

"(e)  Confirmation. Upon the granting of a motion to modify, the court shall confirm the award as modified; upon the denial of a motion to vacate or modify, it shall confirm the award."

Apparently no appeal was taken from this order.

Heeding the advice of Special Term, plaintiff commenced this action against the City of New York, alleging, *inter alia*, the chronology as stated above and that the union's refusal to institute a proceeding to vacate the arbitration award constituted a breach of its statutory duty of fair representation (see *Vaca v Sipes*, 386 US 171, *supra*). Damages in the amount of $50,000 plus reinstatement to his former position were demanded. Prior to the joinder of issue, the city moved pursuant to CPLR 3211 (subd [a]) to dismiss the complaint on a variety of grounds, but prominent among them was the alleged failure to state a cause of action in that the exclusive remedy of a unionized municipal employee claiming to have been denied his right of fair representation is an action against his union and not his employer. Special Term (COOPER, J.) granted the defendant's motion on the ground, *inter alia*, "that a public sector employee is prohibited from maintaining a direct action against his employer for an alleged violation of a collective bargaining agreement between the employer and the employee's union" and the plaintiff has appealed. Upon the argument of this appeal, the parties have consented to our converting the motion into one for summary judgment pursuant to CPLR 3211 (subd [c]) (cf. *O'Hara v Del Bello*, 47 NY2d 363, 367-368; *Schnur v Mehl*, 75 AD2d 890, 891; *Maybrown v Malverne Distrs.*, 57 AD2d 548, 549, mot for lv to app den 42 NY2d 804). We affirm.

In *Vaca v Sipes* (386 US 171, 185, *supra*), the United States Supreme Court held that an employee "may seek judicial enforcement of his contractual rights [under a collective bargaining agreement] * * * if * * * the union [which represents him] has sole power under the contract to invoke the higher stages of the grievance procedure, *and* if * * * the employee-plaintiff has been prevented from exhausting his contractual remedies by the union's *wrongful* refusal to process the grievance." Thus, the court concluded (p 186) that an employee "may bring an action against his employer [for breach of the employment contract] * * * provided the employee can prove that the union as bargaining agent [has] breached its duty of fair representation in

its handling of the employee's grievance" but that "[a] breach of the statutory duty of fair representation occurs *only* when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or [taken] in bad faith" (p 190; emphasis supplied). In addition, the court made it clear that the mere failure on the part of a union to proceed to arbitration with a particular grievance would not, per se, constitute a breach of its statutory duty, for although the court acknowledged (p 191) "that a union may not arbitrarily ignore a meritorious grievance or process it in perfunctory fashion", it refused to hold "that the individual employee has an absolute right to have his grievance * * * [submitted] to arbitration" (p 191). In the words of Mr. Justice WHITE (pp 191-192) : "If the individual employee could compel arbitration of his grievance regardless of its merit, the settlement machinery provided by the contract would be substantially undermined, thus destroying the employer's confidence in the union's authority and returning the individual grievant to the vagaries of independent and unsystematic negotiation. Moreover, under such a rule, a significantly greater number of grievances would proceed to arbitration. This would greatly increase the cost of the grievance machinery and could so overburden the arbitration process as to prevent it from functioning successfully. See *NLRB v. Acme Industrial Co.*, 385 U.S. 432, 438; Ross, Distressed Grievance Procedures and Their Rehabilitation, in Labor Arbitration and Industrial Change, Proceedings of the 16th Annual Meeting, National Academy of Arbitrators 104 (1963). It can well be doubted whether the parties to collective bargaining agreements would long continue to provide for detailed grievance and arbitration procedures of the kind encouraged by L. M. R. A. § 203 (d), *supra,* if their power to settle the majority of grievances short of the costlier and more time-consuming steps was limited by a rule permitting the grievant unilaterally to invoke arbitration. Nor do we see substantial danger to the interests of the individual employee if his statutory agent is given the contractual power honestly and in good faith to settle grievances short of arbitration. *For these reasons, we conclude that a union does not breach its duty of fair representation, and*

*thereby open up a suit by the employee for breach of contract, merely because it settled the grievance short of arbitration.*" (Emphasis supplied.) Additionally, given the more recent decision in *Hines v Anchor Motor Frgt.* (424 US 554), it is no longer open to question that the principles enunciated in *Vaca v Sipes (supra)* are equally applicable to the situation in which an employee's grievance has actually been submitted to arbitration and a decision rendered.

With the affirmance in 1976 of the Fourth Department's memorandum decision in *Gosper v Fancher* (40 NY2d 867, affg 49 AD2d 674, cert den 430 US 915), it appears that the Court of Appeals has effectively established the doctrine of *Vaca v Sipes (supra)* as the law in the State of New York, at least in the private sector (see, also, *Wingenbach v Mushroom Transp. Co.*, 51 AD2d 855; cf. *Chupka v Lorenz-Schneider Co.*, 12 NY2d 1, app dsmd 372 US 227; *Parker v Borock*, 5 NY2d 156; *Matter of Farmer v H. O. Penn Mach. Co.*, 50 AD2d 562, mot for lv to app den 38 NY2d 708). The city maintains, however, that the rule should be contra in the public sector, as subdivision 3 of section 209-a of the Civil Service Law specifically provides that "[i]n applying this section, fundamental distinctions between private and public employment shall be recognized, and no body of federal or state law applicable wholly or in part to private employment, shall be regarded as binding or controlling precedent." This argument was squarely rejected by the Fourth Department in *Jackson v Regional Tr. Serv.* (54 AD2d 305, 308-309 [opn by Cardamone, J.]), which, in turn, has been cited with approval by the Third Department in *De Cherro v Civil Serv. Employees Assn.* (60 AD2d 743), but for aught that appears, the matter has never been decided either in this court or in the Court of Appeals.

Although we might otherwise be disposed to adopt the views of our up-State brethren, we deem it unnecessary to pass upon the question now, for assuming, without deciding, that the doctrine of *Vaca v Sipes* (386 US 171, *supra)* is applicable in the public sector and that it applies with equal vigor to a situation in which the gravamen of the

employee's complaint is that his collective bargaining agent has failed or refused to challenge an arbitrator's decision *in court* pursuant to CPLR article 75 (cf. *Hines v Anchor Motor Frgt.*, 424 US 554, *supra; Vaca v Sipes, supra)*, the record herein is devoid of any allegation, much less proof, of the fact that the conduct of the union was the product of any arbitrariness, bad faith or discrimination towards the plaintiff.

Thus, unlike the situation in *Vaca v Sipes (supra)*, this is not a case in which the union has refused to proceed to arbitration with a grievance (cf. *Jackson v Regional Tr. Serv., supra)*, nor is it a case such as *Hines v Anchor Motor Frgt. (supra)*, in which the union's handling of the arbitration proceeding has been drawn into question. Rather, plaintiff's sole contention in the case at bar is that the union's refusal to proceed against the City of New York to vacate the arbitration award constituted a breach of its duty of fair representation. It has nowhere been alleged that the foregoing determination was reached in other than good faith, however, and while the plaintiff does dispute the *wisdom* of his union's decision, he in no way questions or controverts the city's showing (based on the union's affidavit in the prior proceeding) that the decision to forego legal action was made after a careful consideration of the arbitrator's opinion and the limited basis upon which the award might be vacated pursuant to CPLR 7511 (subd [b]). It is axiomatic that the mere refusal on the part of a union to process a grievance further is not a per se violation of its duty of fair representation (see *Vaca v Sipes, supra*, p 192), and it is equally well established that a mere error in judgment on the part of the union does not constitute such a breach (see *Hines v Anchor Motor Frgt., supra*, pp 570, 571). Accordingly, even if the union has made an erroneous decision, the plaintiff's attempt to establish a breach of the union's duty will not be materially advanced thereby.

In sum, in order to maintain a direct action against an employer, it is essential for an employee to be able to establish bad faith, arbitrariness or discriminatory conduct on the part of his union in the protection of his contractual

rights (see *Vaca v Sipes, supra;* see, also, *Gosper v Fancher, supra; Jackson v Regional Tr. Serv., supra)*. It is precisely this element which is lacking in the instant case, and it is for this reason that the action, even if otherwise sufficient, cannot be sustained.

HOPKINS, J. P., LAZER and GIBBONS, JJ., concur.

Judgment of the Supreme Court, Kings County entered July 23, 1980, affirmed, with $50 costs and disbursements.