G. GREGORY SYMANSKI, Respondent, v EAST RAMAPO CENTRAL
SCHOOL DISTRICT, Defendant; BURTON CAPLAN et al., Appellants.

Second Department, May 5, 1986

APPEARANCES OF COUNSEL

*Hinman, Straub, Pigors & Manning, P. C. (William F. Sheehan* of counsel), for appellants.

*Harp & Harp (Jon A. Simonson* of counsel), for respondent.

OPINION OF THE COURT

RUBIN, J.

The plaintiff, a principal employed by the defendant East Ramapo Central School District (hereinafter the school district) and a member of the defendant union, applied for a longevity increment to which he claimed he was eligible under paragraph E of article XI of a collective bargaining agreement entered into between the union and the school district. The school district denied the plaintiff's application, informing the plaintiff that he must retire in order to be eligible for the longevity increment, albeit no such prerequisite appeared in paragraph E of article XI of the collective bargaining agree-

ment. The plaintiff refused to tender his resignation and filed a grievance against the school district. He was informed by the union's executive board that the school district's refusal to pay the increment unless he resigned did not constitute a valid grievance because the school district and the union had executed a memorandum of understanding, dated November 23, 1978, wherein it was agreed "that the language contemplated as a longevity increment [in Article XI, paragraph E of the collective bargaining agreement] is applicable only to those persons who become 55 years of age during the contract year in which retirement occurs". Despite the executive board's belief that the grievance was meritless, the union nevertheless assisted the plaintiff through the first three stages of the contractual grievance procedures. Since a request for arbitration under the collective bargaining agreement had to be submitted within 10 days of the receipt of the school district's denial of the plaintiff's grievance, the chairman of the union's grievance committee sent a request for arbitration to the school district solely to preserve the plaintiff's rights until the union had an opportunity to consider the merits of his grievance. Thereafter, the executive board decided to submit the issue of whether or not to proceed with the arbitration of the plaintiff's grievance to a vote of the union membership. At a general meeting on May 28, 1981, the members voted 10 to 8 not to pursue arbitration of the plaintiff's grievance.

Subsequently, the plaintiff commenced this action against, *inter alia,* the union and its former and current presidents to recover damages for an alleged breach of their statutory duty of fair representation. The union and the individual defendants moved for summary judgment seeking dismissal of the complaint insofar as it is asserted against them. Special Term, in an order entered June 28, 1983, initially denied the motion, finding that an issue of fact existed as to whether the memorandum of understanding was part of the collective bargaining agreement and binding upon the members. The union and individual defendants moved to renew their summary judgment motion, predicated, in part, upon an order of the Appellate Term for the Ninth and Tenth Judicial Districts in an unrelated action by the school district to recover a longevity increment paid to another union member, who had rescinded his promise to retire after accepting the increment. In that action, the Appellate Term granted summary judgment in favor of the school district, holding, *inter alia,* that the subject

memorandum of understanding was binding on the union member *(see, East Ramapo Cent. School Dist. v Elkind,* App Term, 9th & 10th Judicial Dists, Aug. 24, 1983).* Upon granting both the appellants' cross motion to renew and a motion by the plaintiff for reargument, Special Term adhered to so much of its prior determination as denied the appellants' motion for summary judgment, concluding that the Appellate Term's decision was not dispositive of the issue as to the enforceability of the memorandum of understanding, and finding an additional factual issue existed as to whether Robert's Rules of Order were violated at the general meeting when the union members voted not to pursue arbitration of the plaintiff's grievance.

"A breach of the statutory duty of fair representation occurs only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith" *(Vaca v Sipes,* 386 US 171, 190; *Albino v City of New York,* 80 AD2d 261; *Matter of Hoffman v Board of Educ.,* 84 AD2d 840; *Deneen v City of New York,* 113 Misc 2d 523, 524). The mere failure on the part of the union to proceed to arbitration with a particular grievance would not, per se, constitute a breach of its statutory duty, because an individual employee does not have an absolute right to have his grievance submitted to arbitration *(Vaca v Sipes, supra; Albino v City of New York, supra).* A union is not required to carry every grievance to the highest level, but must be permitted to assess each grievance with a view to its individual merit and its consistency with prior and pending grievance proceedings *(Gunkel v Garvey,* 45 Misc 2d 435, 441). "Just as a union must be free to sift out wholly frivolous grievances which would only clog the grievance process, so it must be free to take a position on the not so frivolous disputes" *(Humphrey v Moore,* 375 US 335, 349; *Gunkel v Garvey, supra).* A union's decision that a particular grievance lacks sufficient merit to warrant proceeding to arbitration does not constitute a breach of its statutory duty of fair representation merely because a Judge or jury subsequently finds the grievance meritorious *(Vaca v Sipes, supra,* at pp 192-193). Consequently, any factual issues regarding the legal status of the memorandum of understanding are not a bar to the granting of the appellants' motion for summary judgment. While a fact finder may conclude, after a trial, that the subject memorandum of understanding was not enforceable for the reasons proffered by the plaintiff, absent proof that the union acted discriminatorily, arbitrarily or in

bad faith in reaching a contrary conclusion, its refusal to submit the plaintiff's grievance to arbitration is not a breach of its duty of fair representation (see, Vaca v Sipes, supra; Albino v City of New York, supra).

We agree with Special Term's conclusion that no bona fide issue of fact exists regarding the plaintiff's allegations that the union discriminated against him when it refused to arbitrate his grievance. The plaintiff has failed to rebut the union's evidence that it has never negotiated, arbitrated, or otherwise intervened on behalf of any applicant for the longevity increment who had not expressed the intention to retire. With respect to six other members who applied for the longevity increment under paragraph E of article XI of the collective bargaining agreement, the union has, without exception, consistently adhered to the position that longevity increments are to be paid only to applicants who tender their resignation. Furthermore, at the May 28, 1981 meeting when the union members voted against submitting the controversy to arbitration, one concern was the pending action by the school district against the union and Joel Elkind to recover the longevity increment paid to Elkind, who, after receipt of the increment, rescinded his promise to retire. The union's president noted that supporting the plaintiff's grievance herein would be in contradiction of the stand taken by the union in that action and might have an impact on the union's liability, under the memorandum of understanding and as signatory to a separate letter of agreement, dated June 20, 1980. In these documents, the union had agreed, in essence, to indemnify the school district for longevity increments paid to ineligible members, such as members who did not retire in the year they elected to receive the longevity increment. Accordingly, there is no proof that the plaintiff was singled out by the union for treatment invidiously different from that extended to other union members. Nor is there any bona fide issue that the union's refusal to submit the controversy to arbitration was arbitrary.

The record contains undisputed evidence that the union, in reliance upon the memorandum of understanding, determined that the plaintiff's grievance lacked merit. That determination had a rational, albeit perhaps erroneous, basis. The union's executive board and attorney were of the opinion that the memorandum of understanding was binding because the membership had ratified it at a general meeting on November 8, 1978, and, thereafter, it was executed by authorized represen-

tatives of both the union and the school district. The minutes of the general meeting of November 8 can be construed as supporting this opinion. Furthermore, 80% of the members who attended that meeting, including the recording secretary, maintained in affidavits that both the collective bargaining agreement and the memorandum of understanding were discussed and both documents were ratified by a majority vote of the membership. The history behind the inclusion of the longevity increment provision in the collective bargaining agreement also furnished support for the contention that an applicant had to submit his resignation in the year he elected to receive the longevity increment. According to the union's chief negotiator, the purpose of the longevity increment was to save jobs at a time when schools in the school district were being closed, by providing an incentive for members to retire. The retirement incentive was termed a "longevity increment" in the hope that the New York State Teachers' Retirement System for Public School Teachers would not exclude the payments in its computation of a retiree's three-year, final average salary, under Education Law § 501 (11) (b). Said statutory provision expressly excludes "any lump sum payments for sick leave, annual leave or any other form of termination pay" in computing the final average salary earned during the three years of actual service immediately preceding a teacher's date of retirement or any other three years of consecutive service. To effectuate the intent of the contracting parties, the memorandum of understanding was drafted to clarify that a member's entitlement to the longevity increment under paragraph E of article XI was conditioned upon retirement. The chief negotiator explained the meaning of the longevity increment and the memorandum of understanding to the union membership prior to its ratification and again at the May 28, 1981 meeting.

It is well established that a mere error in judgment on the part of the union does not constitute a breach of the duty of fair representation (see, Hines v Anchor Motor Frgt., 424 US 554, 570; Albino v City of New York, 80 AD2d 261, supra). While the plaintiff proffered evidence disputing the wisdom of the union's conclusion that the membership was bound by the memorandum of understanding, he has not controverted the showing that the union's decision to forego arbitration was made after a careful consideration of the plaintiff's arguments and was not predicated upon irrelevant factors (cf. Thompson v Brotherhood of Sleeping Car Porters, 316 F2d 191).

The plaintiff's allegations regarding a breach of Robert's Rules of Order do not suffice to create a bona fide issue that the union acted in bad faith in refusing to proceed to arbitration. The plaintiff alleged that Robert's Rules of Order were violated during the meeting at which the membership voted not to pursue arbitration of his grievance when the union's president relinquished the chair (a nonvoting position) to speak and vote against pursuing arbitration. Initially, the plaintiff argued that the president's conduct prejudiced him because it removed from the voting floor a member who was obligated to assume the chair, resulting in the narrow defeat of his application. After the union proffered evidence that a presiding officer may relinquish the chair to a vice-president under Robert's Rules of Order, that the chair was relinquished to Vice-President Fran Hunter and that Fran Hunter would have voted no if she had not accepted the chair, the plaintiff next contended that he was prejudiced because the chair was not neutral. In support of his contention, the plaintiff noted that before the presiding officer relinquished the chair to participate in debate, Fran Hunter had seconded a motion that the union not proceed with the arbitration of his grievance, showing that she was not impartial. In order to participate in debate, section 42 of Robert's Rules of Order requires the presiding officer to relinquish the chair and turn it over "(a) to the vice-president, or (b) to the ranking vice-president present who has not spoken on the question and does not decline on the grounds of wishing to speak on it, or—if no such vice-president is in the room—(c) to some other [qualified] member". We agree with the plaintiff that the chair should preferably have been relinquished to a qualified member who had not shown himself or herself to be partisan of the pending motion. Nevertheless, the minutes of the meeting demonstrate that Fran Hunter was impartial in her approach to the task of presiding, as evidenced by the fact she ruled the union's president out of order with respect to a comment made during the course of debate. The plaintiff does not allege that he was not given an adequate opportunity to present arguments and facts in support of his grievance. Such a conclusory allegation would be belied by the minutes of the May 28 meeting. Moreover, the minutes indicate that the members in attendance were given an opportunity to ask questions and to address the issue. Under the circumstances, the technical violation of Robert's Rules of Order is insufficient to raise a question that the union had acted in bad faith in refusing to proceed with the arbitration of the plaintiff's grievance.

One additional contention warrants discussion. The plaintiff alleges that the union's refusal to submit his grievance to arbitration was part of a scheme to defraud the New York State Teachers' Retirement System for Public School Teachers by concealing from said entity the memorandum of understanding, which would disclose that the longevity increment was a form of termination pay. The plaintiff contended that concealment of this information could possibly result in the illegal inflation of retirement benefits, if the retirement system, in reliance upon the language of paragraph E of article XI of the collective bargaining agreement, erroneously included the longevity increment in the computation of a member's three-year final average salary in violation of Education Law § 501 (11) (b). However, concealment of the memorandum of understanding as a wrongful motive for the union's refusal to submit the plaintiff's grievance to arbitration is belied by the undisputed fact that, a year before the union's decision, the manager of the Office of Member Benefits of the New York State Teachers' Retirement System had informed the school district and members of the union who had already applied for the longevity increment that such an increment would be disallowed in the computation of the retiring employee's three-year final average salary. The manager construed the language of paragraph E of article XI of the collective bargaining agreement as a retirement incentive with the obvious purpose of inflating the three-year final average salary, since the special increment was granted one time only and could be spread out over three years at the applicant's discretion. Concluding that the longevity increment was not regular salary but a form of termination pay (see, e.g., Holly v New York State Teachers' Retirement Sys., 122 Misc 2d 871), the manager made it clear that such longevity increments would be excluded from the computation of a retiring member's three-year final average salary in compliance with Education Law § 501 (11) (b). Nevertheless, the manager noted that the longevity increment could be included in the five-year, final average salary pursuant to Education Law § 501 (11) (a), which did not exclude retirement incentives from the computation. If the five-year, final average salary was higher than the three-year, final average salary, the manager noted the former would be lawfully used to calculate retirement benefits (see, e.g., Matter of McCaffrey v Board of Educ., 48 AD2d 853). Consequently, the facts do not indicate that the union breached its fiduciary duty to the

plaintiff by refusing to submit his grievance to arbitration as part of a scheme to defraud the New York State Teachers' Retirement System.

Since "only the existence of a bona fide issue raised by evidentiary facts and not one based on conclusory or irrelevant allegations will suffice to defeat summary judgment" *(Rotuba Extruders v Ceppos,* 46 NY2d 223, 231; *Stempien v Civil Serv. Employees Assn.,* 91 AD2d 864, 865), in the absence of facts indicating that the union's refusal to arbitrate the plaintiff's grievance was discriminatory, arbitrary, or in bad faith, the appellants' motion for summary judgment dismissing the complaint insofar as it is asserted against them should be granted.

MOLLEN, P. J., LAZER and GIBBONS, JJ., concur.

Justice Gibbons has been substituted for former Justice, now Judge Titone *(see,* Judiciary Law § 21; *Wittleder v Citizens' Elec. Illuminating Co.,* 47 App Div 543).

Order of the Supreme Court, Rockland County, dated March 16, 1984, reversed insofar as appealed from, on the law, with costs, the appellants' motion for summary judgment dismissing the complaint insofar as it asserted against them granted, plaintiff's motion denied as academic, and the plaintiff's action against the remaining defendant is severed.