Dozier WASHINGTON, Plaintiff,

v.

NIAGARA MOHAWK POWER CORP.;
International Brotherhood of Electrical Workers, AFL–CIO, Defendants.

No. 96–CV–762(LEK/RWS).

United States District Court,
N.D. New York.

Jan. 19, 2000.

Office of Walter Donnaruma, Albany, NY (Walter Donnaruma, of counsel), for plaintiff.

Bond, Schoeneck Law Firm, Syracuse, NY (Robert A. Laberge, of counsel), Office of D. Jeffrey Gosch, Syracuse, NY (D. Jeffrey Gosch, of counsel), for defendants.

## MEMORANDUM–DECISION AND ORDER

KAHN, District Judge.

### I. Background

Plaintiff Mr Dozier Washington is an employee of Defendant Niagara Mohawk Power Corporation ("Niagara Mohawk" or "Company"); his employment is governed by a collective bargaining agreement ("c.b.a."), in which he is represented by Defendant International Brotherhood of Electrical Workers, AFL–CIO ("IBEW" or "Union"). Plaintiff started working for Niagara Mohawk as a meter reader in 1986. In 1989 he became an electrician with the Company. In 1994, under disputed circumstances, he returned to the position of meter reader. The present suit arises out of the 1994 job change.

Plaintiff has claimed five causes of action, arising under 42 U.S.C. §§ 981, 1988 and 2000e–2. (*See* Complaint at 1 ¶ 1 (Doc. 1, 13 May 1996).) The first and second causes of action were solely against the Company. (*Id.* at 3–4.) Plaintiff and Defendant Company subsequently agreed to discontinue and dismiss with prejudice his action against the Company; with those parties' consent it was so ordered by the Honorable Ralph W. Smith, Jr., United States Magistrate Judge. (*See* Stipulation of Dismissal (Doc. 23, 4 Dec. 1997).)

Plaintiff's third cause of action claims that Defendant IBEW failed and refused to file a grievance with the Company on Plaintiff's behalf solely because of Plaintiff's race or color (Plaintiff is black). (Complaint at 4.) Plaintiff's fourth cause of action (now maintained solely against the Union) claims that the Company and the Union conspired to demote Plaintiff in contravention of his rights under federal law and under the c.b.a. (*Id.* at 4–5.) Plaintiff's fifth cause of action claims that the Union breached its duty of fair representation by failing to grieve Plaintiff's purported demotion. (*Id.* at 5.) Plaintiff seeks damages and punitive damages.

### II. Motions

Now before the Court are Defendant IBEW's motion for summary judgment and counterclaim for attorney's fees (*see* Notice of Mot. and Mot. Summ. J. (Doc. 26, 9 Feb. 1998)), and Plaintiff's cross motion for partial summary judgment (*see* Notice of Cross–Mot. Partial Summ. J. (Doc. 31, 9 Feb. 1998)). Defendant's motion is more properly described as a "motion for dismissal, or, in the alternative, for summary judgment," because it contends that Plaintiff fails to state a cause of action, in addition to arguing that there is no genuine issue of material fact for trial. The Court will apply the appropriate legal standard for each type of motion.

#### A. Standards of Decision

##### 1. Dismissal

A motion to dismiss pursuant to Fed. R.Civ.P. 12(b)(6) must be denied "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim [that] would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). In assessing the sufficiency of a pleading, "all factual allegations in the complaint must be taken as true,"

*LaBounty v. Adler*, 933 F.2d 121, 123 (2d Cir.1991), and all reasonable inferences must be construed in favor of the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Bankers Trust Co. v. Rhoades*, 859 F.2d 1096, 1099 (2d Cir.1988), *cert. denied sub nom., Soifer v. Bankers Trust Co.*, 490 U.S. 1007, 109 S.Ct. 1642, 104 L.Ed.2d 158 (1989).

> [C]onsideration is limited to the factual allegations in [the] complaint, to documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of which judicial notice may be taken, or to documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit.

*Brass v. American Film Technologies, Inc.*, 987 F.2d 142, 150 (2d Cir.1993).

The Rules do not require the plaintiff to set out in detail the facts upon which the claim is based, but only that a defendant be given "fair notice of what the claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Individual allegations, however, that are so baldly conclusory that they fail to give notice of the basic events and circumstances of which the plaintiff complains are meaningless as a practical matter and, as a matter of law, insufficient to state a claim. *Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir.1987).

#### 2. *Summary Judgment*

Summary judgment must be granted when the pleadings, depositions, answers to interrogatories, admissions and affidavits show that there is no genuine issue as to any material fact, and that the moving party is entitled to summary judgment as a matter of law. Fed.R.Civ.P. 56; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Lang v. Retirement Living Pub. Co.*, 949 F.2d 576, 580 (2d Cir.1991). The moving party carries the initial burden of demonstrating an absence of a genuine issue of material fact. Fed.R.Civ.P. 56;

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Thompson v. Gjivoje*, 896 F.2d 716, 720 (2d Cir.1990). Facts, inferences therefrom, and ambiguities must be viewed in a light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Project Release v. Prevost*, 722 F.2d 960, 968 (2d Cir.1983). A genuine issue is an issue that, if resolved in favor of the non-moving party, would permit a jury to return a verdict for that party. *R.B. Ventures, Ltd. v. Shane*, 112 F.3d 54, 57 (2d Cir.1997) (citing *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505).

When the moving party has met the burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 586, 106 S.Ct. 1348. At that point, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56: *Liberty Lobby Inc.*, 477 U.S. at 250, 106 S.Ct. 2505; *Matsushita Elec. Indus. Co.*, 475 U.S. at 587, 106 S.Ct. 1348. To withstand a summary judgment motion, evidence must exist upon which a reasonable jury could return a verdict for the nonmovant. *Liberty Lobby, Inc.*, 477 U.S. at 248–49, 106 S.Ct. 2505; *Matsushita Elec. Indus. Co.*, 475 U.S. at 587, 106 S.Ct. 1348. Thus, summary judgment is proper where there is "little or no evidence ... in support of the non-moving party's case." *Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1223–24 (2d Cir.1994) (citations omitted).

The Court addresses the motions on the basis of these standards, and in the following order: Defendant IBEW's motion for summary judgment on Plaintiff's fourth cause of action, on Plaintiff's fifth cause of action, on Plaintiff's third cause of action, and including Defendant's counterclaim for reasonable attorney's fees, costs and disbursements; and Plaintiff's cross motion for partial summary judgment.

### III. *Discussion*

Local Rule 7.1(a)3 (formerly 7.1(f)) requires that "[a]ny motion for summary judgment shall contain a Statement of Material Facts.... Each fact listed shall set forth a specific citation to the record where the fact is established." Defendant's 7.1(a)3 statement in support of its motion for summary judgment (Doc. 29, 9 Feb. 1998) was not in compliance with the Local Rule, as it included no citations to the record. Defendant's *reply* statement of material facts (Doc. 39, 9 Feb. 1998), in contrast, did comply with L.R. 7.1(a)3 in this regard. Plaintiff's response statement of material facts generally complied with the Local Rule, but failed to set forth specific citations to the record for at least two numbered paragraphs. (*See* Statement of Material Facts (hereinafter "Pl.'s Mat. Facts") at 2, 4 ¶¶ 4, 15 (Doc. 34, 9 Feb. 1998).) The Court cautions the parties that L.R. 7.1(a)3 provides that "*[f]ailure of the moving party to submit an accurate and complete Statement of Material Facts shall result in a denial of the motion,*" and "*[a ]ny facts set forth in the Statement of Material Facts shall be deemed admitted unless specifically controverted by the opposing party.*" The Local Rules require these statements because they help "secure the just, speedy, and inexpensive determination" of actions, Fed.R.Civ.P. 1; the Court expects the parties to adhere scrupulously to all applicable requirements in their future submissions.

### A. *Defendant's Motion for Summary Judgment*

### 1. *Fourth Cause of Action: Conspiracy Claim*

### i. *The Claim's Basis in Law*

Defendant IBEW argues that Plaintiff fails to state a cause of action for conspiracy, or in the alternative cannot maintain his cause of action under applicable law, and that Plaintiff has not specified any statute that Defendants violated. (*See* Mem. Law Supp. Def.'s Mot. Summ. J. (hereinafter "Def.'s Summ. J. Mem.") at 14 (Doc. 30, 9 Feb. 1998).) Defendant further argues that Plaintiff's cause of action must be founded in 42 U.S.C. § 1985(3), "Conspiracy to interfere with civil rights: Depriving persons of rights or privileges" (*see id.*), but that because Plaintiff is apparently trying to vindicate his rights under Title VII of the Civil Rights Act of 1964 (42 U.S.C. §§ 2000e to –17) (*see id.* at 5), he fails to state a cause of action in conspiracy, as the Supreme Court has held that § 1985(3) does not apply to actions arising under Title VII. (*See id.* at 15 (citing *Great Am. Fed. Sav. & Loan Ass'n v. Novotny*, 442 U.S. 366, 378, 99 S.Ct. 2345, 60 L.Ed.2d 957 (1979)).)

Plaintiff responds that he has stated a conspiracy claim under § 1981, instead of Title VII, and that § 1985(3) is thus irrelevant. (Pl.'s Mem. Law at 5 (Doc. 36, 9 Feb. 1998).) He states that his "claims are not founded upon Constitutional rights such as equal protection or the right to vote. As hereinbefore stated, Plaintiff's claims relate to the benefits, privileges, terms, and conditions of his contractual relationship with his employer, and their impairment because of his race." (*Id.*) This assertion is plausible at one level, as his complaint sets forth 42 U.S.C. §§ 1981, 1988, and 2000e–2 as the statutory bases for his action. (*See* Complaint at 1 ¶ 1.) Notably, however, his complaint itself does not specify in which statute his conspiracy claim is grounded, and compared to his response memorandum the complaint describes that claim in a less tightly circumscribed manner: to wit, that Defendants' purported conspiracy sought "to impair and defeat Plaintiff's rights under the laws of the United States and under the said collective bargaining agreement." (*Id.* at 5 ¶ 30.) Furthermore, Plaintiff's argument in his memorandum of law is misleading in its attempt to distinguish a claim sounding in "equal protection" from one arising out of a racially-discriminatory impairment of a contractual relationship. Section 1981 states that the making and enforcing of

contracts are among the rights encompassed by a guarantee of "the full and *equal benefit of all laws* and proceedings for the security of persons and property as is enjoyed by white citizens." (42 U.S.C. § 1981(a) (emphasis added).)

■ In either case, Plaintiff is mistaken in maintaining that § 1985(3) is "irrelevant." First, "a violation of federal rights secured by § 1981 may serve as the basis of a § 1985 claim." *Johnson v. Greater Southeast Community Hosp. Corp.,* 903 F.Supp. 140, 153 (D.D.C.1995). Second, the right to recover for conspiracy must be based in *statutory* language. *See* 15A C.J.S. *Conspiracy* § 10(2) (1967 & Supp. 1999). Section 1981, standing alone, does not create a right to recover for conspiracy, and must be pled with § 1985 to state a claim of conspiracy. Notably, Plaintiff cites no cases to the contrary under federal law.

### ii. *The Claim's Basis in Facts*

■ Apart from pleading necessary *legal* bases for the claim, a party alleging a conspiracy must set forth *facts* sufficient to warrant a trial. Specifically, in a conspiracy suit, the plaintiff, *first,* "must allege, with at least some degree of particularity, overt acts [that] defendants engaged in [that] were reasonably related to the promotion of the claimed conspiracy.... [C]omplaints containing only 'conclusory,' 'vague' or 'general allegations' of a conspiracy to deprive a person of constitutional rights will be dismissed." *Thomas v. Roach,* 165 F.3d 137, 147 (2d Cir.1999) (third alteration in original) (internal quotation marks omitted); *see also Sommer v. Dixon,* 709 F.2d 173, 175 (2d Cir.1983). *Second,* a plaintiff must further allege facts and present evidence that can show that the defendants acted on the basis of a discriminatory animus against a protected class. 165 F.3d at 147.

1. As defined in L.R. 7.1(a)3.

### a. *Facts Set Forth to Establish the Promotion of a Conspiracy*

The argument underlying Plaintiff's conspiracy claim in this action is that when a general workforce reduction at Niagara Mohawk required layoffs at his job level—Electrician C—he should, under the terms of the c.b.a., have been reassigned to an Electrician B job; in that event, he would happen to have displaced, or "bumped," Mr Dominick Ieraci, an employee with less seniority than Plaintiff. Instead, Plaintiff was reassigned to a Meter Reader job, which was the entry-level position he had held when first employed by the Company. Plaintiff asserts that had he been allowed to "bump" Mr Ieraci, who is white, then all the employees in that shop would have been black. That, he claims, "was apparently unacceptable to the Defendants." (Aff. Dozier Washington at 4 ¶ 17 (Doc. 32, 9 Feb. 1998).) Accordingly, "an understanding between the Defendants Niagara Mohawk and IBEW was reached whereby the junior white employee was allowed to remain in the Electrician B job while I was demoted to Meter Reader contrary to my rights under the [c.b.a.]." (*Id.* at 4 ¶ 16; *see also id.* at 2–4, 6 ¶¶ 5–6, 8, 12–13, 18, 29; Aff. Ray Leigh at 2 ¶¶ 7–11 (Doc. 33, 9 Feb. 1998); Pl.'s Mat. Facts at 3 ¶¶ 9, 13.)

■ The Court has reviewed the record[1] before it in the light of the well-established standard discussed in *Thomas, Sommer* and numerous other Second Circuit cases. The Plaintiff's assertions are no more than conclusory, vague and general allegations that cannot sustain a conspiracy claim. The allegations do not *directly* show that Defendants agreed to act with the purpose of depriving Plaintiff of his constitutional rights. Nor are they sufficient to permit a trier of fact to *infer* that Defendants agreed to act with that purpose. In particular, Plaintiff's allegations fail to give a basis for establishing a nexus between the Company's reassignment of him to the Meter Reader position, and any decision by the Union not to file

an individual grievance on his behalf. (*See* Aff. Dozier Washington at 4 ¶¶ 16, 18; Pl.'s Mat. Facts at 3 ¶¶ 9, 11–13.)

### b. *Facts Set Forth to Establish Discriminatory Animus*

Even if Plaintiff's allegations demonstrated that Defendants had conspired, he would still need to establish that Defendants acted on the basis of a discriminatory animus against a protected class. His allegations of bias, too, are largely conclusory (e.g., "Defendant IBEW failed and refused to file a grievance on Plaintiff's behalf solely because of his race." (Pl.'s Mat. Facts at 3 ¶ 12)). He does allege that the Company's decision not to bump a white junior employee in his favor demonstrates bias, because that decision kept the shop from becoming staffed in its entirety by black employees, and "that was apparently unacceptable to the Defendants." (Aff. Dozier Washington at 4 ¶ 17.) Plaintiff, however, wishes to prove that Defendants agreed on a course of action adverse to his interests solely because of his race, and their discriminatory animus against that protected class. The proof he offers in support of this contention is their "apparent" *desire* to avoid having an all-black shop. Thus, the premise of Plaintiff's argument is the very thing he wishes to prove; his argument is, in other words, tautological.

■ The record otherwise fails to show *independent* evidence of racial bias. Plaintiff does not allege any other *experiences,* in his fourteen years of employment at Niagara Mohawk prior and subsequent to his reassignment, that might indicate bias on the part of the Company or the Union; nor do any of the affidavits indicate *words* or *actions* by Defendants that might in even a general sense suggest a tendency toward racial bias. Plaintiff has submitted nothing that would suggest that either Defendant had at other times engaged in any *practice* that had the effect of reducing the number of blacks in Niagara Mohawk shops, much less of avoiding all-black shops. On this record, no reasonable trier of fact could find cause to conclude that Defendant IBEW had acted on the basis of race-based discriminatory animus. (For other examples of the application of the relevant legal standards to conspiracy claims, *see Herrmann v. Moore,* 576 F.2d 453, 456–57 (2d Cir.1978); *Thornton v. City of Albany,* 831 F.Supp. 970, 980–81 (N.D.N.Y.1993) (McCurn, Sr. J.).)

Accordingly, the Court GRANTS Defendant IBEW's summary judgment motion with respect to Plaintiff's fourth cause of action, for conspiracy.

### 2. *Fifth Cause of Action: Breach of Duty of Fair Representation*

Defendant IBEW asserts that Plaintiff's claim for breach of the Union's duty of fair representation should be dismissed because the statute of limitations lapsed before Plaintiff commenced this action, and because Plaintiff has failed to exhaust administrative remedies as required under federal law. (*See* Def.'s Summ. J. Mem. at 9–13.) Defendant premises its argument on the assumption that Plaintiff is basing this claim on 29 U.S.C. § 185 ("Section 301"), as a "hybrid" breach of duty of fair representation claim. (*See id.* at 9–10.) Defendant makes this assumption because the complaint did not specify the statutory basis for the claim. (*See* Complaint at 5 ¶¶ 32–35.)

Plaintiff responds that a cause of action for a union's breach of the duty of fair representation exists under New York State law, as well as federal law. (*See* Pl.'s Mem. Law at 3 (citing *Albino v. City of New York,* 80 A.D.2d 261, 438 N.Y.S.2d 587, 592 (N.Y.A.D.1981)).) Plaintiff's description of New York law appears to be accurate, but the Court does not look favorably on a plaintiff's invoking a legal basis for a cause of action by bringing it up in a response to another party's motion, instead of raising it in the complaint or an amended complaint. Plaintiff's complaint *specifically* invokes no law other than three sections of Title 42 of the United

States Code. (*See* Complaint at 1 ¶ 1.) In describing his causes of action against the Union, Plaintiff refers only to "the laws of the United States" in identifying the source of his rights that he alleges were violated. (*Id.* at 4, 5 ¶¶ 26, 30.) No mention of state law appears until the complaint's final section, which sets forth Plaintiff's claim for punitive damages. Even there, Plaintiff makes only a cursory reference to New York State law, providing no details of which law or laws he may intend to invoke: "Defendants jointly and severally violated Plaintiff's rights under the laws of the United States and the State of New York by discriminating against the Plaintiff because of his race with regard to the terms and conditions of his employment." (*Id.* at 6 ¶ 36.) The Court further notes that Plaintiff's statement of his cause of action for breach of duty of fair representation encompasses paragraphs 32 through 35, and includes by reference *only* paragraphs 1 through 17, 23 through 26, 29 and 30—but *not* paragraph 36, the *only* one in his complaint in which Plaintiff mentioned state law. (*See id.* at 5 ¶ 32.) The Court thus doubts that Plaintiff properly invoked the pendent jurisdiction of this Court over a *state law* claim for breach of duty of fair representation.

■ If Plaintiff's fifth cause of action arises out of federal law, then, as Defendant argues, it is time barred. Under the National Labor Relations Act, "[w]henever it is charged that any person has engaged in ... unfair labor practice, the Board ... shall ... issue ... a complaint stating the charges ...: *Provided,* That no complaint shall issue based upon any unfair labor practice occurring more than six months prior to the filing of the charge with the Board ...." 29 U.S.C. § 160(b). (Defendant cited this statute incorrectly, as "29 U.S.C. § 10(b)" (*see* Def.'s Summ. J. Mem. at v, 10); indeed, there *is no* " § 10" in Title 29 of the United States Code.) The Supreme Court has held that § 160(b)'s six-month period for making charges of

unfair labor practices applies to claims for breaches of a union's duty of fair representation. *See DelCostello v. International Bhd. of Teamsters,* 462 U.S. 151, 169–72, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983). Defendant asserts that Plaintiff received notice of his job reassignment no later than 12 June 1994, and the Union had 30 working days thereafter to file a grievance, a period that would end 25 July 1994. (*See* Def.'s Summ. J. Mem. at 7.) Because the basis of the fifth cause of action is Plaintiff's assertion that the Union failed to file a grievance it should have filed, under § 160(b) Plaintiff needed to commence an action on that basis within six months from that date—that is, by 25 January 1995. Plaintiff filed his complaint 13 May 1996, almost 22 months after the cause of action arose. This is well outside the period in which to file charges, and on that basis Plaintiff may not maintain his fifth cause of action.

Were the Court to accept Plaintiff's argument that his cause of action for breach of duty of fair representation arises out of New York State law, the Court would still be constrained to dismiss that cause of action. New York's law, on actions complaining about conduct that would constitute a union's breach of its duty of fair representation, requires that a plaintiff commence such actions within four months of the date the alleged breach becomes final. *See* N.Y. C.P.L.R. § 217.1 (McKinney 1999). For the same reasons barring this cause of action under federal law, Plaintiff commenced this suit far too late, and may not maintain his fifth cause of action.

■ Plaintiff argues, however, that Defendant's answer addressed only federal statutes (*see* Answer (Doc. 4, 19 June 1996)), and that the Union thus waived "any objection to the timeliness of Plaintiff's New York State law cause of action." (Pl.'s Mem. Law at 4.) In view of the fact that the exclusive focus of Defendant's arguments on federal law is directly attributable to Plaintiff's omission of any substan-

tive, specific invocation of New York State law in his complaint and other submissions *prior* to his memorandum of law (*supra*), this is a remarkable argument for Plaintiff's counsel, Mr Donnaruma, to advance. Not only did the complaint fail to specify any state law from which any of the causes of action might arise, but Plaintiff failed to use the ample time available to him to amend his complaint to identify state law bases for his action. In addition, in other submissions to the Court the Plaintiff passed on obvious opportunities to make his reliance on state law clear. In his submission replying to the Union's answer and answering the Union's counterclaim, Plaintiff denied Defendant's working premise on the law underlying Plaintiff's claim for breach of duty of fair representation, twice asserting that "[t]he law of unfair labor practices as set forth in Chapter 7 of Title 29 of the Unites States Code has no application to this action." (Reply to Union's Answer at 1, 2 ¶¶ 4, 5, 7 (Doc. 5, 3 July 1996).) If one accepts Plaintiff's assertion that his fifth cause of action is grounded in state law, it is inexplicable that his submissions through his attorney omitted a forthright invocation of the pertinent state law, especially when Plaintiff was denying that the federal law that Defendant was discussing applied to this action. (*See also* Reply to Answer of Niagara Mohawk (Doc. 7, 26 July 1996), in which Plaintiff likewise makes no mention of state law.) These rebuttals by Plaintiff of Defendant's assertions are exactly the places in which Defendant and the Court had every reason to expect that Plaintiff would make an affirmative correction of misapprehensions about the law he was relying on. The Defendant clearly cannot be expected to address legal bases for Plaintiff's claims that Plaintiff himself never advances. If the Court accepted Plaintiff's argument that Defendant had waived objections to state law claims by failing to address assertions and arguments that Plaintiff never made, it would be authorizing a strategy of "stealth" pleading, in which a plaintiff would benefit by "hiding the ball" as long as possible, and emerging triumphant when the defendant failed to guess what he was doing. This would be utterly contrary to the spirit and letter of the Rules of Civil Procedure. *See* Fed. R.Civ.P. 8(e), "Pleading to be Concise and Direct." The Court rejects Plaintiff's argument as wholly without merit.

For the foregoing reasons, the Court will GRANT Defendant IBEW's motion to dismiss Plaintiff's fifth cause of action, for breach of duty of fair representation.

3. *Third Cause of Action: Unlawful Discrimination*

Plaintiff stated as his third cause of action that "Defendant IBEW failed and refused to file a grievance on Plaintiff's behalf solely because of Plaintiff's race and/or color, in contravention of the laws of the United States." (Complaint at 4 ¶ 26.) Defendant premisses its summary judgment motion on the assumption that Plaintiff brought this cause of action pursuant to the provisions of 42 U.S.C. § 2000e–2, wherein § 2000e–2(c)(2) makes it an unlawful employment practice for a labor organization to "fail or refuse to refer for employment any individual, in any way [that] would deprive or tend to deprive any individual of employment opportunities, or would limit such employment opportunities or otherwise adversely affect his status as an employee ..., because of such individual's race[ or] color ...." This was not an unreasonable assumption for Defendant to make; Plaintiff had again failed to specify *which* statute constituted the legal basis for *this* cause of action (*see* Complaint at 4 ¶¶ 22–27), but *had* stated at the beginning of his complaint that § 2000e–2 was one of the statutes under which his action arose (the others he cited were §§ 1981 and 1988) (*see id.* at 1 ¶ 1), and the language of the complaint indeed tracks the language of the statute. On that basis, Defendant argues that Plaintiff's third cause of action is jurisdictionally defective (for failure to file a complaint first with the Equal Employ-

ment Opportunity Commission (EEOC)), and procedurally defective (for failure to meet the statutory requirement to file a charge with the EEOC within 180 days of the discriminatory act, and to obtain a "right to sue" letter from the EEOC). (*See* Def.'s Summ. J. Mem. at 5–9.)

Plaintiff, however, now maintains that he states his third cause of action pursuant to 42 U.S.C. § 1981, instead of § 2000e–2 (at this point, it is not clear to the Court which of Plaintiff's causes of action *did* arise under § 2000e–2, which Plaintiff did, after all, cite in the opening paragraph of his complaint). Therefore, Plaintiff argues, under § 1981 he did not need to file a complaint with the EEOC; a three-year period of limitations, not a six-month period, applied; and he did not need to obtain a "right to sue" letter from the EEOC. (*See* Pl.'s Mem. Law at 1–2.) Although the Court most emphatically does not favor pleading practices that compel a defendant to guess about the legal bases of the plaintiff's causes of action, Plaintiff has now stated a statutory basis for his third cause of action that appears to avoid the jurisdictional and procedural defects that Defendant set forth in its memorandum.

The Court must still decide whether there are genuine issues of material fact that require a trial. Plaintiff contends that "whether the Defendant IBEW's failure to file an individual grievance on Plaintiff's behalf was motivated by racial discrimination" is a disputed issue of material fact. (*See* Pl.'s Mem. Law at 6.) Plaintiff, however, is confusing the proposition that is to be proved with facts that have a tendency to make that proposition more probable. "Whether Defendant's actions [assuming they were adverse to Plaintiff's rights] were motivated by racial discrimination" is certainly disputed by the parties, but it is not "a genuine issue of material fact"; it is instead the substantive question on which a jury would have to reach a verdict. The Court cannot accept the identification of *this* sort of disputed matter as a genuine issue of material fact

preventing summary judgment; such disputes are the very *essence* of civil actions, and were their existence accepted as a bar to summary judgment then it would be simply impossible ever to grant a motion for summary judgment.

■ Plaintiff has arguably raised legitimate questions about whether his reassignment complied with the c.b.a., and whether his Union satisfactorily represented him in this matter (although the Court here expresses no opinion on those questions). Apart from conclusory remarks by Plaintiff, however, the record before the Court shows a remarkable lack of evidence tending to indicate race-based animus or bias on the part of either Defendant. Had Plaintiff submitted evidence of Defendant statements showing racial bias, or of some *pattern* or *history* of employment practices tending to indicate racial discrimination (and these two examples need not be taken as an exhaustive list of possibly probative evidence), then the Court might be prepared to find that a genuine issue of material fact existed for trial. Not only did Plaintiff fail to do so, but Defendant also set forth legitimate, nondiscriminatory reasons for the actions it took. As the record stands, no reasonable trier of fact could find cause to determine that the Union has discriminated against Plaintiff because of his race or color. The conclusory nature of Plaintiff's assertions are discussed at greater length above in III.A.1, the section on Plaintiff's conspiracy cause of action.

Accordingly, the Court GRANTS Defendant IBEW's summary judgment motion with respect to Plaintiff's third cause of action, for discrimination because of race or color.

### 4. *Defendant's Counterclaim for Reasonable Attorney's Fees*

Defendant's arguments for its counterclaim focus on the legal bases that it assumed underlay Plaintiff's causes of action. (*See* Def.'s Summ. J. Mem. at 17–19.) As discussed above, Plaintiff was apparently relying on different statutes; Defendant's

counterclaim arguments are thus not on point. Plaintiff's vagueness in his complaint and other submissions is, certainly, largely responsible for this problem. Defendant, however, prolonged this litigation by failing to note such problems, and failing to demand either greater specificity from the Plaintiff or dismissal of the case. In addition, while Defendant's analysis of apparent jurisdictional and procedural defects in Plaintiff's case is commendable, the Court finds it inexplicable that Defendant failed to take note of and make arguments concerning the fundamental weakness of Plaintiff's case in setting forth *facts* that might tend to support his allegations. The Court thus finds the granting of fees to Defendant to be inappropriate.

Accordingly, the Court DENIES Defendant IBEW's counterclaim for reasonable attorney's fees, costs and disbursements.

### B. *Plaintiff's Cross Motion for Partial Summary Judgment*

Plaintiff moves that the Court find that Defendant violated Appendix C of the c.b.a. when Plaintiff was reassigned to the Meter Reader position, and find that the only issue remaining for trial is whether Defendant IBEW's actions were racially motivated. (*See* Notice of Cross–Mot. Partial Summ. J. at 1.) Because the Court has granted summary judgment against or dismissed Plaintiff's remaining causes of action, this motion is moot. In addition, as detailed above, the Court has found that there are no issues of material fact warranting trial that might tend to show racial bias or animus on the part of Defendant.

Accordingly, the Court DENIES Plaintiff's cross motion for partial summary judgment.

### *CONCLUSION*

For the reasons stated above, it is hereby:

ORDERED that Defendant IBEW's motion for summary judgment is **GRANTED;** and

IT IS FURTHER ORDERED that Defendant IBEW's counterclaim for reasonable attorney's fees, costs and disbursements is **DENIED;** and

IT IS FURTHER ORDERED that Plaintiff's cross motion for partial summary judgment is **DENIED;** and

IT IS FURTHER ORDERED that Plaintiffs suit is **DISMISSED IN ITS ENTIRETY;** and

IT IS FURTHER ORDERED that **THIS CASE IS HEREBY CLOSED;** and

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this order by regular mail upon the parties to this action.

IT IS SO ORDERED.